WILLIAM McGARY, Plaintiff. in Error, v. THE PEOPLE, Defendant in Error.

In indictments for arson, the ownership of the property to which fire is set must be correctly averred, and a variance between the indictment and the proof in that respect is fatal.

A corporation existing under the laws of this State cannot, in criminal indictments or other legal proceedings, be properly designated by two names. Allen, J.

Accordingly, an indictment for arson, charging the building fired to have belonged to the "Phœnix Mills Company," and it appearing on the trial that the true corporate name of the company owning the building was "The Phœnix Mills of Seneca Falls."—*Held*, fatally defective, and further by Church, Ch. J., Allen and Rapallo, JJ., (Grover, Peckham and Folger, JJ., *contra*) that proof that the company was generally known in the community by the name used in the indictment did not obviate the defect.

The prisoner was indicted under the statute (3 R. S., 667, § 4) making it felony to set fire to or burn any building erected for the manufacturing of cotton or woolen goods, or both. It was proved upon the trial that the whole frame of the structure fired, designed for a factory, was not up at the time; that the part which had been raised was not entirely enclosed, the floors were not laid, the stairs were not up, and no part of the building ready for occupation or substantially ready for the reception of the machinery.—*Held* (Grover, Peckham and Folger, JJ., *contra*), that this was not a building "erected" within the meaning of the statute, and there could be no conviction of the prisoner under the indictment.

(Argued January 20th, and decided March 21st, 1871.)

Error to the Supreme Court, at General Term, in the Fourth department, to reverse their affirmance of the conviction of the plaintiff in error, by the Court of Sessions of Seneca county, of the crime of arson in the third degree. The accused was charged, in the first count of the indictment, with setting fire to and burning, at the town of Seneca Falls, "a certain building erected for the manufacturing of woolen goods, there situate, and belonging to the Phœnix Mills Company, a corporation duly organized under the statute of the State of New York as a manufacturing company."

In the second count, the building was described as "a certain warehouse, belonging," etc., describing the owner as in the first count.

Upon the trial, the certificate of incorporation, in April, 1867, under the general laws of the State, of a company for the manufacture of woolen goods and cotton goods and goods partly of woolen and partly of cotton, in the town of Seneca Falls, by the name of "The Phœnix Mills of Seneca Falls,"

was produced and given in evidence. Evidence was given, under objection, by the president of the corporation, that the company was "generally known in community and in business transactions as the Phœnix Mills Company." On cross-examination he testified that he had heard it called Phœnix Mills Company. "Our company is known as Phœnix Mills. I think at Seneca Falls most frequently called Phœnix Mills." Another witness testified: "This company is generally known by name of Phœnix Mills; I only know what it is called by a few persons; always spoken of as Phœnix Mills and Phœnix Mills Company." On cross-examination he said: "The company is generally spoken of as Phœnix Mills Company; the building as Phœnix Mills No. 1."

Evidence was given tending to prove that the accused set fire to a building in the process of construction by this corporation, on the night of the 14th of September, 1868. The building was not completed, and was but slightly injured by the fire. It was a frame building; the roof was on, and it was sided up at the sides; the two ends were not sided up or inclosed. The windows were not in; the floors were partially laid, but neither of the floors was completed. There were no chimneys.

Ells were to be, and were, during the same year attached to the ends of the building, and constituted a part of the plan of the factory building, and the portion of the ends of the building covered by the ells, were, after the fire, lined or ceiled. In some of the stories, no floor was laid, no stairs had been built. The accused gave evidence tending to show that the building had not progressed as far towards completion as indicated above, and that the roof was not on, and the rafters had not been raised. There was a quantity of lumber in the basement, that had been procured for the making of boxes. At the close of the evidence, on the part of the prosecution, the counsel for the accused, asked for an acquittal, on the ground of variance between the indictment and the evidence, and also that there was no building which was the subject of arson, nor any building erected for the manufacture of woolen goods,

but that the building was only in the process of construction.

The several grounds were overruled, and the request was denied. The judge, at the close of the trial, charged the jury, that if the building was so far advanced in its construction as to have assumed form and character as a building, and to be properly denominated a building, then it was a building within the statute, and that the purposes for which the building was erected, could be shown, by proving the intention of the proprietors, that if the building was in the condition as represented by the witnesses for the prosecution, it was sufficiently advanced in its construction, to be legally the subject of arson under the statute. He also charged that if the corporation was commonly known in the vicinity, by the name used in the indictment, the variance from the true name was not material, and refused to charge that, if the name of the corporation was " The Phœnix Mills of Seneca Falls," the accused should be acquitted. Proper exceptions were taken to the several rulings and decisions of the court. The accused was convicted, and sentence was pronounced, the proceedings upon which have been stayed.

*Francis Kernan,* for the plaintiff in error, on the question of variance, cited Archbold's Criminal Pleading, p. 79, Marg. p. 265 ; 7 edn. by Waterman, and notes; *People* v. *Slater* (5 Hill, 401); 1 Archbold Cr. Pr. and Pldgs., p. 124, Waterman's ed. and notes on p. 402 ; 2 id., p. 488. On the construction of the statute and whether the structure fired, was a " building erected," he cited *Elsmore* v. *Hundred of St. Barnards* (8 B. and C., 461); Laws of 1869, chap. 873 ; *People* v. *Allen* (5 Den., 79). Beardsley, C. J.

*William C. Hazelton* (district attorney), for the defendant in error, on the variance as to the name of the company, cited 1 Chitt. Cr. Law, 211, 213, 215 ; 2 Hale, 241, 245 ; *U. S.* v. *Kinman* (1 Bald., 292); 1 Archbold, 7 ed., 267; id., note 1, p. 404; Archbold, 3 Am. ed., 31. That there was a " building erected," he cited *Rex* v. *Stallion* (1 Moody C. C. R.,

398; 2 Archbold, Waterman ed., p. 716, 717; *Comm.* v. *Squire* (1 Metc., 258); *Allen* v. *State* (10 Ohio, 287).

Allen, J. The misnomer of the corporation owning the property which was the subject of the arson, was not the result of ignorance of, or inability to learn its true name. It had become incorporated, only about eighteen months before the indictment was found, and the certificate of incorporation was of record in the clerk's office of the county, and accessible to the grand jury and prosecuting officer.

The record evidence of the existence of the corporation, given upon the trial, and then supposed to be · necessary in support of the indictment, would, had it been produced before the grand jury, have prevented the mistake, and avoided the very serious and embarrassing question now presented.

It is conceded that the averment of ownership of the property injured was a necessary and substantial part of the indictment, and that without it the indictment would have been defective. It is material, in an indictment at common law for arson, that the ownership of the house should be correctly stated, so as to show it to be the house of another, and an indictment omitting to state whose house it was is not sufficient. (1 Russ. on Crimes, 564.) The allegation as to the ownership of the property cannot be rejected as surplusage, as was properly done in *United States* v. *Howard* (3 Sumner, 12). Many of the reported cases have turned upon very nice questions as to the ownership of the property the subject of the crime, but all agree that the name of the owner must be correctly stated. The name of the person whose property has been injured is matter of description, and must be proved as laid. (Roscoe's Cr. Ev., 95; Ib., 388.)

No allegation which is descriptive of the identity of that which is essential to the charge in the indictment can be rejected, and the name of the person in whom the property which is the subject of the charge is laid, or on whom the offence is stated to have been committed, must be proved according to the indictment. (2 Russ. on Crimes, 788, 789.)

The averment of ownership is connected with the charge and must be proved, and as a general rule the name of the party whose existence is essential to the charge must be proved in conformity to the indictment, and a misnomer is usually fatal. (2 Russ. on Crimes, 795 ; 1 id., 857 ; 2 Stark Ev., 65, part 4.)

These general principles are not denied ; but another rule was invoked in support of the conviction, by the application of which the accused was convicted at the sessions, to wit, that the owner of the property may be named and described by his true name, or that by which he is generally called and known. · A prosecutor may be described by the name he has assumed, or that by which he is generally known, although such names are not the true or baptismal names of the person. An individual can by user assume or acquire a name by which he can contract, and sue and be sued. As in *Rex* v. *Norton* (R. & R., 510), the prosecutrix had been called and known by the name of Mary Johnson, and by no other name for five years ; and in *Att'y Gen'l* v. *Hawkes* (1 Tyrwhitt, 3), the individual had dropped his middle name of Tyrrell and signed his name Thomas Dabbs, and was known by that name. In these cases, and in the other cases in which the rule has been applied, the new name has been so assumed and used by the individual, or applied to him by the general public, as, if not to have taken the place of the true name, at least to have become equally common as designating and identifying the person intended.

In the cases cited a misnomer could not have been pleaded in abatement in an action for or against the individuals by their new and assumed names. (See *Sull's case*, 2 Leach, 861 ; *Rex* v. *Timmins*, 7 C. and P., 499.) Assuming that a corporation may take and have a name other than that by which it is created, the evidence is very slight of any such change of name here. Had the corporation been sued by the name given it in the indictment, a replication to a plea of misnomer in abatement, that it was known as well by one name as the other, would hardly have been sustained by the

evidence.    At most the evidence was not conclusive, and
should have been submitted to the jury, as in *Reg* v. *Evans*
(8 C. and P., 765), as a question of fact, and not decided by
the court as a question of law.    But the more important
question is whether a corporation created and existing under
the laws of this State can, in legal proceedings, be known by
two names.    That it would have been proper to aver the
ownership of the property by the  true name is not denied,
and if the conviction is sustained, it will follow that the cor-
poration may have two names, by either of which it may be
known and called in legal proceedings indifferently.    It is
well settled that corporations may claim the benefit of con-
tracts, grants, devises and bequests, although not described
and named with entire accuracy, and in ascertaining the
intent of the contracting parties and testators, evidence is
proper to show by what name the corporation was generally
known and called by the parties, and this with a view to
ascertain the intent.    The evidence is given upon the same
principle that evidence is given to show in what sense par-
ticular terms are used in a will or other instrument.    These
cases, however, do not aid in resolving the question before us.
The only means of identifying a corporation aggregate is by
the name.    The members are liable to change, and it can
only be known by its name.    The prosecutor here very pro-
perly gave the record evidence of the creation of the corpora-
tion, but was forced to explain his own record by parol, and
show that another corporation, a corporation under a different
name, had taken the place of that originally incorporated.
His evidence was not in answer and to avoid the effect of
evidence given by the accused, but to get rid of a record put
in evidence by himself and necessary to his case.    The prose-
cutor conceded the necessity of proving the identity of the
corporation, and as that did not result from the identity of
the names he sought to establish it by reputation.

A corporation cannot, except as authorized by law, change
its own name, either directly or by user.  (*Queen* v. *Registrar*,
10 Q. B., 839.)    It cannot do such an act for itself.    Neither

can the public give it a name other than that of its creation, that is, a name by which it can be recognized in judicial proceedings.

A corporation may, very likely, so adopt a name, in the transaction of its business, as to be made liable in its true name upon transactions in its assumed name; but it must then be sued by its true name.

A distinction may exist between an ancient corporation, one existing by prescription, and a modern corporation, one created by charter. It is possible that the former may have a special name by user; but, in this State, we have no corporations save those created by law, and a corporation created within memory can regularly have but one name (Bac. Ab., Corporations, c. 3); and, in all legal proceedings, the true name of the corporation must be used. (*Turvil* v. *Ainsworth*, 2 Ld. Raym., 1515; *Healing* v. *Mayor, etc., of London*, Cro. Car., 574.)

A difference is recognized between a misnomer of a corporation in judicial proceedings, and in obligations, grants, etc.; and while in the former it will be fatal, effect may be given to the latter, notwithstanding the misnomer. (Bac. Ab., *supra;* *Rex* v. *Mayor of Ripon*, Salk., 433; *Rex* v. *Morris*, 1 Ld. Raym., 337. See, also, 2 Ld. Raym., 1238; *Reg.* v. *West*, 2 Eng. Railway Cases, 613; *Rex* v. *Patrick*, 1 Leach Cr. Cas., 287.)

The accused had no opportunity to object to the misnomer upon the trial. He could not plead it in abatement or otherwise; but, upon the traverse of the indictment, the proof of the corporation, as alleged, was upon the prosecution, and the variance was fatal.

There is another difficulty in sustaining the conviction. The indictment is under a statute making it a felony to set fire to or burn "any building erected for the manufacture of cotton or woolen goods or both." (2 R. S., 667, § 4.) The frame of the whole building was not up at the time of the fire, and that part which had been raised was not entirely inclosed; the floors were not laid, the stairs were not up, and no part of it

was ready for occupation, or substantially ready for the reception of the machinery, or for use and occupation for any purpose. A building so incomplete can scarcely be called a building *erected* for any purpose. The statute was designed to protect buildings of the character named when completed, or substantially completed, whether actually occupied or not. A factory building, actually constructed, was contemplated by the statute, and not the frame of a building; a building partially constructed, and in the process of erection or construction. A "building erected" is quite distinct from a "building being erected." A building is a fabric or edifice constructed for use. To erect, when used in connection with a house, or church, or factory, is to build; and neither can be said to be erected until they are built, completed. A building intended for a house not completed, is not a house within a statute authorizing the recovery of satisfaction for burning a house, etc. (*Elmer* v. *The Hundred, etc.*, 8 B. & C., 461; and see *State* v. *McGowan*, 20 Conn., 245.)

We have the sense of the legislature upon the legal interpretation of this statute. By an amendment of the Revised Statutes, in 1869, it is made a crime of a lesser degree than the burning of a completed building to set fire to or burn buildings of this character and description "in the process of erection or construction." (Laws of 1869, ch. 873.) It cannot be that the legislature intended to make the same act arson in different degrees.

The judgment of the Supreme Court and of the Sessions should be reversed; and, as there can be no conviction under this indictment, the prisoner should be discharged.

CHURCH, Ch. J., and RAPALLO, J., concurred in the opinion; ANDREWS, J., concurred in the result on the second ground stated in the opinion; GROVER, PECKHAM, and FOLGER, JJ., dissented.

Judgment of the Supreme Court and of the Sessions reversed, and prisoner discharged.