JAMES W. SYKES

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa January 21, 1890.*

1. CORPORATIONS—*name of corporation, as given in its charter.* A ·provision in the charter fixing the name of the corporation therein created, is an essential part of the act, and is an express legislative dec-.laration that the corporate name shall be as there given.

2. SAME—*change of name—by the corporation itself.* , A corporation ·can not, except as authorized by law, change its own name, either directly or by user. It may acquire a name by usage or reputation, where none is given at its incorporation. If created by charter, it can not .have several names at the same time.

3. SAME—*acting under wrong name—effect thereof.* In order to sus-·tain grants to or by corporations, some latitude is permitted in the use of their names, it being usually sufficient to use the name in substance, though not the same in exact words and syllables. If a corporation conveys by a wrong name, it will not be permitted to avail itself of its ·own wrong after receiving the full consideration.

4. SAME—*changing name by amendatory act—in case of banking cor-·porations—vote of the people—whether essential.* An act of the legislature changing, or providing for changing, the corporate name of a banking corporation already incorporated by act of the legislature under a particular name, is an amendment to such incorporating act, .and if the corporation has banking powers, such amendment will be inoperative unless submitted to the people and adopted by a majority ··vote.

5. In 1857 a private corporation was created by a special act of the :legislature, having banking as well as other powers. In 1872 an act was

passed providing for the change of the names of corporations, which was not submitted to the vote of the people, and under which, at a stockholders' meeting held April 26, 1881, a resolution was passed changing the corporate name of the banking corporation mentioned : *Held,* that while the act of 1872 might be valid as to corporations not possessing banking powers, it could have no application to corporations of that class, and that the name of such corporation remained unchanged.

6. Section 14 of the Banking law of 1887, which provides for the ratification of prior changes of the names of banking corporations, is not retroactive in its operation. The ratification or validation of the change of name dates only from the time the Banking act was approved by the people, in November, 1888. It is doubted whether the legislature had the power to give the ratification of such proceedings a retrospective effect.

7. CRIMINAL LAW—*name of the prosecutor—or of the person or corporation injured by the alleged criminal act—variance.* In all criminal prosecutions, an error in the name of the prosecutor, or of a third party, when his name is material, is fatal. When a corporation is the prosecutor, or is the party so affected by the crime charged that its name becomes material to a proper statement of the offense in the indictment, a variance between the allegations and proof will defeat the prosecution.

8. An indictment under section 25 of the "Act to regulate public warehouses," etc., charged the defendant with the issue of fraudulent and false warehouse receipts, with intent to defraud, etc., "The Merchants' Loan and Trust Company, organized and incorporated under and by virtue of the laws of the State of Illinois." The proof showed that the name of the corporation at the time the indictment was found was "The Merchants' *Savings,* Loan and Trust Company:" *Held,* that there was a clear and material variance in respect to the name of the corporation.

9. SAME—*allegations and proofs—description of the party injured—variance in name—unnecessary particularity in description.* An indictment of a warehouseman for defrauding a banking corporation, alleged, not only that the body defrauded was a corporation, but also that it was organized and incorporated under and by virtue of the laws of this State : *Held,* that the latter averment, though perhaps unnecessarily specific, was a matter of essential description of the corporation alleged to have been defrauded, and imposed upon the prosecution the burden of proving the due organization of such corporation under the laws of this State.

10. No allegation descriptive of the identity of that which is essential to charge in the indictment can be rejected ; and the name of the person in whom the property which is the subject of the charge is laid,

3—132 ILL.

or on whom the offense is stated to have been committed, must be proved according to the indictment.

11.   The fact that a corporation, without authority of law, may have assumed and for a long time carried on business under a wrong name, will not change this rule. If the corporation injured is described by such assumed name, and the proof shows the true name, the prosecution must fail.

12.   SAME—*evidence—proof of corporate existence.*   The act of June 3, 1889, to regulate proof in criminal cases, provides that user shall afford *prima facie* evidence of corporate existence. But that act in no way attempts to change the rules of evidence by which the corporate name may be shown when in dispute. When corporate existence is shown by charter, proof of user becomes no longer necessary or important.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

Mr. J. A. SLEEPER, for the plaintiff in error:

It was necessary for the indictment to aver that the Merchants' Loan and Trust Company was a corporation, otherwise to name the several partners.   *Wallace* v. *People,* 63 Ill. 451.

It may not have been necessary to aver that it was a corporation organized and incorporated under the laws of Illinois, but having so averred, it was necessary to prove such allegation as laid.

The rule is, that whenever a person or thing necessary to be mentioned in an indictment is described with unnecessary particularity, all the circumstances of the description must be proved, for they are essential to its identity.   *Commonwealth* v. *Wellington,* 7 Allen, 299; *Commonwealth* v. *Buckley,* 145 Mass. 181; *Commonwealth* v. *McCarthy,* id. 575; *Commonwealth* v. *Meehan,* 11 Gray, 320; *United States* v. *Howard,* 3 Sumn. 14; *State* v. *Noble,* 15 Me. 476.

Where matter of description is set out in an indictment, it is necessary to prove the whole of the averment, even though some part of it was unnecessary to be stated.   The whole must be proved as stated, unless the unnecessary part may be re-

jected as surplusage, and the material part remain. But if the immaterial part can not be stricken out without striking out the essential part, then the whole statement must be proved as averred, or the indictment can not be maintained. *Commonwealth* v. *Wellington*, 7 Allen, 299; 1 Chitty's Pl. 262.

The act of March 26, 1872, which authorizes a change of name of a corporation having banking powers, is void under section 5, article 11. *Queen* v. *Registrar*, 10 Adol. & Ell. 535; *McGary* v. *People*, 45 N. Y. 153; *Reed* v. *People*, 125 Ill. 592.

A corporation can not change its name, nor in any way amend its charter, except by authority of law. In this State, a corporation created by special act can not change, alter or amend its charter unless authorized to do so by a valid act of the General Assembly. *McGary* v. *People*, 45 N. Y. 153; *Queen* v. *Registrar*, 10 Adol. & Ell. 535; *De Bow* v. *People*, 1 Denio, 9.

As the act of March 26, 1872, does not apply to corporations having banking powers, there was no power or authority for amending the act of the General Assembly creating "The Merchants' Savings, Loan and Trust Company," when the attempt was made to do so in 1881. Its name remained unchanged in 1886, when the acts charged as criminal in the indictment were done by Sykes, and in 1887, when the indictment was presented by the grand jury. There was then no such artificial person, no such corporation, as "The Merchants' Loan and Trust Company." *McGary* v. *People*, 45 N. Y. 153; *Queen* v. *Registrar*, 10 Adol. & Ell. 535; *Rex* v. *Patrick*, 1 Leach's Crown Cas. 287; *Queen* v. *West*, 2 Eng. Ry. Cas. 613; *Rex* v. *Croke*, Cowper, 29; *Reed* v. *People*, 125 Ill. 52.

A corporation can not acquire by usage or common notoriety any name other than that by which it is incorporated. *Queen* v. *Registrar, supra; McGary* v. *People*, 45 N. Y. 153.

The prosecution did not rest its case on proof of user alone, but introduced in evidence the original charter.

Persons and corporations must be described in indictments by the name they bear at their presentation, and if not so described, no change effected afterward will avail to support the prosecution. *Commonwealth* v. *Brown*, 2 Gray, 358; *Commonwealth* v. *Phillipsburg*, 10 Mass. 77.

I am now prepared to say that there is a fatal variance between the name and the description of the corporation as averred in the three counts on which Sykes was tried, and the name and description as proved by the evidence of the people. That the court ought to have instructed the jury to acquit the defendant, see *De Bow* v. *People*, 1 Denio, 9; *People* v. *Peabody*, 25 Wend. 472; *McGary* v. *People*, 45 N. Y. 153; *Jones* v. *State*, 37 Tenn. 346; *Durham* v. *People*, 4 Scam. 172; *Queen* v. *Registrar*, 10 Adol. & Ell. 535; *Queen* v. *West*, 2 Eng. Ry. Cas. 613; *Rex* v. *Croke*, Cowper, 29; *Rex* v. *Patrick*, 1 Leach's Crown Cas. 287; *Wallace* v. *People*, 63 Ill. 451; *Davis* v. *People*, 19 id. 74; *Penrod* v. *People*, 89 id. 150; *Million* v. *People*, 6 Bradw. 537.

Mr. GEORGE HUNT, Attorney General, Mr. JOEL LONGE-NECKER, State's Att'y, and Mr. GEO. N. STONE, for the People:

If this was a civil proceeding, the dealing with the corporation by the name used would estop the plaintiff in error from denying the existence of the corporation. *Brown* v. *Mortgage Co.* 110 Ill. 235; *Hudson* v. *Seminary*, 113 id. 618; *Keigwin* v. *Drainage Commissioners*, 115 id. 347; *Attorney General* v. *Railroad Co.* 112 id. 520.

The identity of a corporation is no more affected by a change of name than the identity of an individual. Morawetz on Corp. sec. 354.

A corporation may acquire a new name by usage or reputation. *Dutch West India Co.* v. *Moses*, Stra. 614; *Knight* v. *Mayor*, 1 Ld. Raym. 80; *Smith* v. *Plank Road Co.* 30 Ala. 650; *Minot* v. *Custer*, 7 Mass. 441; *School District* v. *Blakeslee*, 13 Conn. 227.

Section 14 of the act of 1887, providing for the ratification of acts done under the act of 1872, is retrospective, and cures any defects in changing the name of the corporation.

On the question of variance, counsel cited *People* v. *Dumas,* 106 N. Y. 502; *Haines* v. *People,* 64 id. 148; *Hughes' case,* 29 Cal. 257; *Person* v. *Schwartz,* 32 id. 160; 2 Leach, 861; *Harris* v. *State;* 39 Md. 552; *Doane* v. *State,* 25 Ind. 492; Wharton on Crim. Evi. sec. 94; *State* v. *Brine,* 30 Minn. 522.

Under the act of 1889, evidence was introduced sufficient to prove the legal existence of the company. The legislature has the power to change the rules of evidence. *State* v. *People,* 53 N. Y. 164; *Gage* v. *Caraher,* 115 Ill. 447.

A statute making certain facts *prima facie* proof is retrospective. *People* v. *Lyon,* 27 Hun, 180; *State* v. *Thomas,* 47 Conn. 546.

Mr. Justice Bailey delivered the opinion of the Court:

In this case, James W. Sykes was indicted by the grand jury, in the Criminal Court of Cook county, for divers offenses against the provisions of section 25 of the "Act to regulate public·warehouses, and the warehousing and inspection of grain, and to give effect to Article 13 of the Constitution of this State," in force July 1, 1871. 1 Starr & Curtis, 1975. The indictment contained twenty-eight counts, but the defendant was tried on the ninth, tenth and twelfth counts only, and on such trial the jury found him guilty, and fixed his punishment at imprisonment in the penitentiary for the term of two years. The court, after denying the defendant's motion for a new trial, passed sentence in accordance with the verdict, and the defendant now brings the record to this court by writ of error.

In each of the counts upon which the defendant was tried, it is alleged that, on·the 7th day of August, 1886, in the county of Cook, the defendant was a warehouseman of a certain public warehouse in said county of class "C" for the storage of

grass seeds. The ninth count alleges that, on the day above mentioned, the defendant, "with intent to, and contriving and intending, feloniously, unlawfully, fraudulently, designedly and deceitfully, to cheat and defraud the Merchants' Loan and Trust Company, the same then and there being a corporation organized and incorporated under and by virtue of the laws of the State of Illinois, did feloniously, falsely, unlawfully, knowingly and designedly," make certain pretenses and statements to the cashier of "the said The Merchants' Loan and Trust Company, organized and incorporated as aforesaid," said pretenses and statements being, in substance, that the defendant was then and there the owner and in possession of forty-five hundred bags of timothy seed, and that the same was then and there actually in store in said warehouse, and had been by him set apart from his other property in said warehouse; that he had marked and distinguished said forty-five hundred bags of timothy seed by and with certain marks and brands, to identify the same as being the timothy seed described in three certain false and fraudulent warehouse receipts which he then and there proposed to issue and did issue to "The Merchants' Loan and Trust Company, a corporation as aforesaid," as security for the payment of a certain sum of money which the defendant then and there proposed to borrow and did borrow from the said "The Merchants' Loan and Trust Company, a corporation as aforesaid;" that said three false and fraudulent warehouse receipts were each of them then and there good, valid and genuine warehouse receipts for the property therein described, said warehouse receipts being in the words and figures following:

"*Warehouse receipt No. 2048—J. W. Sykes & Co.'s public warehouse of class 'C,' for the storage of grass seeds, 98 and 100 Michigan Ave.*

"CHICAGO, ILL., *August 26, 1885.*

"Received from Merchant's Loan and Trust Co., in apparent good order, into our store as above, twenty-two hundred bags

of timothy seed, marked thus: 1000 bags marked '32,' 800 bags marked '33,' and 400 bags marked '34,' deliverable to the order hereon of the Merchants' Loan and Trust Co., surrender of this receipt and payment of storage, loss or damage by the elements, heat, leakage, shrinkage, ratage, fire, etc., at owner's risk. Storage paid for six months.

"Rates of storage two cents per bag for first month, and two cents per bag each following month or fraction thereof.

J. W. SYKES & Co."

(The other two warehouse receipts were of the same tenor and effect as the foregoing, except that they covered the residue of the forty-five hundred bags of timothy seed above mentioned).

Said count further alleges that the defendant, by said warehouse receipts, then and there falsely pretended that said forty-five hundred bags of timothy seed were then in store in said warehouse at the time of issuing said receipts; that said warehouse receipts were then and there produced, issued and delivered by the defendant to said cashier for the purpose of inducing him to loan, transfer and deliver to the defendant a large sum of money, to-wit, $15,500, the money and property of said "The Merchants' Loan and Trust Company, a corporation as aforesaid," on a credit of two months, and that said cashier, relying upon and believing said representations, and being deceived thereby, was then and there induced, by reason thereof, to loan, transfer and deliver to said defendant said $15,500 on a credit of two months from the date above mentioned.

Said count further alleges, in substance, that the defendant, at the time of making said representations, in truth and in fact, was not the owner of said forty-five hundred bags of timothy seed, and did not have or hold said timothy seed in said warehouse, and had not set apart from his other property in said warehouse, said forty-five hundred bags of timothy seed, and had not marked and designated said quantity of timothy

seed by and with marks and brands to mark and distinguish the same as being the timothy seed described in said false and fraudulent warehouse receipts, and that the defendant, at the time of making said several pretenses, well knew the same to be false and fraudulent, and so it was alleged that the defendant, being then and there a public warehouseman in manner and form aforesaid, falsely, fraudulently and feloniously did issue warehouse receipts for property not actually in store at the time of issuing said receipts, contrary to the form of the statute, etc.

The tenth and twelfth counts, which are substantially alike, allege that the defendant, on the 7th day of August, 1886, at said county, being a warehouseman as aforesaid, "did falsely, fraudulently and feloniously issue to a certain corporation, to-wit, The Merchants' Loan and Trust Company, then and there being organized and incorporated under and by virtue of the laws of the State of Illinois, three certain false and fraudulent warehouse receipts for certain property, to-wit, forty-five hundred bags of timothy seed, which said property, he, the said James W. Sykes, warehouseman as aforesaid, then and there and thereby falsely pretended was actually in store in said public warehouse, so described as aforesaid, at the time of issuing said receipts." Said counts set forth said receipts *in extenso*, and then allege, in substance, that the defendant issued the same with intent thereby then and there to prejudice, damage and defraud the said "The Merchants' Loan and Trust Company, organized and incorporated as aforesaid," whereas in truth and in fact, there was not actually in store, at the time of issuing said warehouse receipts, at said public warehouse, the said forty-five hundred bags of timothy seed, and that the defendant, then and there being a warehouseman, then and there, in manner and form aforesaid, falsely, fraudulently and feloniously, did issue warehouse receipts for property not actually in store at the time of issuing said receipts, contrary to the form of the statute, etc.

The principal ground upon which the plaintiff in error now seeks to obtain a reversal of the judgment is, that there is a material variance between the true name of the corporation shown by the evidence to have been defrauded by the issuing of said warehouse receipts, and the name of said corporation as the same is alleged in the indictment. The evidence tended to show that said corporation, at the date of said warehouse receipts, and for several years prior thereto, was known and had been doing business under the name of "The Merchants' Loan and Trust Company." The State's attorney, however, for the purpose of proving the due organization and incorporation of said company under the laws of this State as alleged in the indictment, read in evidence the charter of said corporation, being a private act of the General Assembly of this State, entitled "An Act to incorporate the Merchants' Savings, Loan and Trust Company," Approved January 28, 1857. Private Laws of 1857, p. 82. Said act declares that certain persons therein named, and their associates and successors, shall be a body politic and corporate, by the name and style of "The Merchants' Savings, Loan and Trust Company," and confers upon said corporation certain powers, and among them, banking powers, viz, to receive money on deposit, to discount according to bank usage, to buy and sell exchange, to grant and purchase annuities, and to issue letters of credit and other commercial obligations, provided the same shall not be in the similitude of bank notes designed to circulate as money. *Reed* v. *The People*, 125 Ill. 592.

The State's attorney also read in evidence the record of a certain meeting of the stockholders of said corporation, called and held on the 26th day of April, 1881, under the provisions of the act of March 26, 1872, providing for the change of the names of corporations, (1 Starr & Curtis, 624), at which a resolution was adopted that the name of "The Merchants' Savings, Loan and Trust Company" be changed to "The Merchants' Loan and Trust Company."

It is not pretended that the proceedings for changing said corporate name were not in all respects in conformity with the provisions of the act of March 26, 1872, the contention being that said act can have no application to a banking corporation. Said act was passed subsequent to the adoption of the Constitution of 1870, and section 5, of article 11 of said Constitution provides as follows:

"No act of the General Assembly authorizing or creating corporations or associations with banking powers, whether of issue, deposit or discount, nor amendments thereto, shall go into effect or in any manner be in force, unless the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law."

It can not be doubted that an act changing, or providing a mode for changing, the corporate name of a banking corporation already incorporated by an act of the General Assembly under a particular name, is an amendment to such incorporating act. The provision fixing the name of the corporation created is an essential part of the act, and is an express legislative declaration that the corporate name shall be as there given. "The identity of name is the principal means of effecting that perpetual succession, with members frequently changing, which is an important purpose of incorporation." *Regina* v. *Registrar of Joint Stock Cos.*, 10 Adolph. & Ellis, N. S. 839. As said in Bacon's Abridgment: "The names of corporations are given of necessity; for the name is, as it were, the very being of the constitution; for though it is the will of the king that erects them, yet the name is the knot of their combination, without which they could not perform their corporate acts; for it is nobody to plead and be impleaded, to take and give, until it hath gotten a name." 2 Bac. Abridg., tit. Corporations, C., 1. Any act therefore which provides that a corporation shall or may take another name, changes

in an essential particular the organic law of such corporation, and is therefore necessarily an amendment thereto. The charter of the corporation in question declares that the name of said corporation shall be "The Merchants' Savings, Loan and Trust Company." If another act were passed expressly changing that name to something else, such act would unquestionably be an amendatory act. No reason can be perceived why an act permitting the stockholders of the corporation to do the same thing is not equally so. The charter of said corporation, being an act creating a corporation with banking powers within the meaning of the constitutional limitation above cited, was not subject to amendment except by an act properly submitted to and adopted by the people of the State at a general election. The act of March 26, 1872, was not so submitted, and therefore, while it is doubtless valid as applied to corporations not possessing banking powers, it can have no application to corporations of that class. It follows then, that the proceedings by which the corporation in question attempted to change its corporate name were without legal authority, and were therefore inoperative and void.

But it is urged that the difficulty here pointed out is obviated by the provisions of the 14th section of the "Act concerning corporations with banking powers," approved June 16, 1887, and adopted by a vote of the people of the State at the general election held in November, 1888. The 11th section of that act makes provision for changing the name of any corporation with banking powers existing by virtue of any general or special law of the State, and section 14 provides that: "In all cases where any corporation having any banking powers existing under and by virtue of any general or special laws of this State, has, prior to the passage of this act, changed its name  *  *  *  in the manner provided by an act of the General Assembly of this State, entitled An Act to provide for changing the names  *  *  *  of incorporated companies, approved and in force March 26, 1872, such change

or changes are hereby ratified and confirmed and made valid in all respects as if made in pursuance of the provisions of this act." Laws of 1887, p. 94.

It is plain, we think, that this act neither has or purports to have a retroactive effect. Changes of names previously attempted under the act of 1872 are ratified and confirmed, but how? In all respects as if made in pursuance of the provisions of the act of 1887. As they could not have been made in pursuance of that act until it was in force, it seems clear that it was not intended that the ratification should be deemed operative as of a previous date. The fair inference is, that it was the intention of the legislature to place changes of names attempted to be made under the act of 1872 in the same situation, and to give them the same effect, that they would have had if they had been made under section 11 of the act of 1887, and as in that case their validity could not antedate the adoption of the latter act by the people in November, 1888, the proceedings validated were obviously intended to take effect and be operative only from that date.

It may indeed be doubted whether giving the ratification of such previous proceedings a retroactive effect was within legislative power. Such proceedings being absolutely void, an attempt to validate them retroactively would be the same, in effect, as an attempt to retroactively change a corporate name. When a corporation has existed through a period of time past under a given corporate name, the fact of its having done so, and of such being its corporate name during that period, is as irrevocable as is any other past event. What is past can not be recalled or changed even by legislative omnipotence.

The indictment was presented by the grand jury on the 20th day of September, 1887, and at that time the act in relation to corporations with banking powers had not been adopted by the people and was not in force. The name of said corporation therefore had not then been changed, and the indictment should have described it by its name as given by

the act of incorporation. It can not be doubted that the difference between that name and the name alleged is such as to constitute a clear and material variance.

It is claimed, however, that the averment of the indictment is sustained by the evidence tending to show that said corporation, ever since the time it attempted to change its name, had assumed, done business under, and been generally known and recognized by the name alleged, and that having thus acquired such corporate name by user, the identity of the corporation defrauded with the one named in the indictment is sufficiently established. It is not necessary for us to determine whether a corporation may not acquire a corporate name by user, or whether such name, when acquired, may not be a sufficient designation and description of the corporation in judicial proceedings, as the indictment not only alleges that the body defrauded was a corporation, but also that it was organized and incorporated under and by virtue of the laws of this State. This latter averment, though perhaps unnecessarily specific, was a matter of essential description of the corporation alleged to have been defrauded, and imposed upon the prosecution the burden of proving the due organization of said corporation under the laws of this State. As said in *McGary* v. *The People*, 45 N. Y. 153: "No allegation which is descriptive of the identity of that which is essential to the charge in the indictment can be rejected, and the name of the person in whom the property which is the subject of the charge is laid, or on whom the offense is stated to have been committed, must be proved according to the indictment." In making the proof thus rendered necessary by the averments of the indictment, the State's attorney, as he was compelled to do, produced and read in evidence the act of the General Assembly by which the corporation alleged to have been defrauded was created and organized; and by that act it conclusively appears that, at the time of the commission of the offense charged, and at the time the indictment was found,

the name of said corporation was materially variant from that alleged in the indictment. Even then if the name of a corporation may, in the absence of better evidence, be shown by usage or reputation, here it was shown by the best evidence possible, viz, the act itself by which the corporation was created and named.

The name thus proved varying materially from that alleged in the indictment, it is urged that said variance is cured or rendered unimportant by the fact that the corporation had, without authority of law, assumed and been for some time doing business under the name alleged in the indictment. The law undoubtedly is, that a corporation can not, except as authorized by law, change its own name, either directly or by user. As said by Lord Denman in *Regina* v. *Registrar of Joint Stock Cos. supra:* "After a company has been completely registered without defect or omission, so as to be incorporated by the name set forth in the deed of settlement, such incorporated company has not the power to change its name. * * * And though the king, by his prerogative, might incorporate by a new name, and the newly-named corporation might retain former rights, and sometimes its former name also, it never appears to be such act as the corporation could do for itself, but requires the same power that created the corporation."

It is doubtless true that a corporation may acquire a name by usage or reputation, but the cases where names have been held to be so acquired are generally if not uniformly where no name is given to the corporation at its organization by the State. Thus, in *Dutch West India Co.* v. *Moses*, 1 Strange, 612, it appeared that said company had never received any particular name by act of the State, and it was held that it might collect a name by reputation from its business, and being always known by that name might well be sued by it. In an anonymous case reported in 3 Salk. 102, it was held that if an incorporation exists by prescription, it may have

several names, but if by charter it is otherwise, for in such case it can not have several names at the same time and for the same purpose. In *Smith* v. *Plank Road Co.* 30 Ala. 650, it was contended that the plaintiff had no corporate existence because it had been provided with no name; but it was held that although the name is usually given by the charter, it is not indispensable that it should be, but that it might be derived from usage. In *South School District* v. *Blakeslee,* 13 Conn. 227, there was no provision in the statute making it necessary for a school district, in becoming organized as such, to designate the name by which the district should be called, but when a district was formed the inhabitants generally assumed such name as they thought proper, and it was held that evidence that the district had been known and called by a particular name was properly admitted. In *Minot* v. *Curtis,* 7 Mass. 441, it appeared that a certain parish had used several names, and it was suggested rather than decided that there was no reason why corporations may not be known by several names as well as individuals. It did not appear, however, that either of the names used was the name given to the corporation at its organization, or that it ever had had such name.

We are referred to no case and have been able to find none where it is held that a corporation, having a corporate name given to it by its charter, can at the same time have a different corporate name by usage or prescription. It is true that, to sustain grants to or by corporations some latitude is permitted in the use of their names, it being usually sufficient to use the name in substance, though not the same in exact words and syllables. To sustain a devise to a corporation it has been held sufficient if the words used show that the testator could only mean a particular corporation, though the name be entirely mistaken. So where a corporation conveys by a wrong name, it will not be permitted to avail itself of its own wrong after receiving the full consideration for the convey-

ance. But where it is necessary to make use of the name of the corporation in judicial proceedings the rule is much more strict. "In legal proceedings, any variation from the true name of a corporation is fatal, even though the corporation be not a party to the proceedings." 2 Bac. Abridg. tit. Corporations, C. 3.

The rule just stated is peculiarly applicable to prosecutions for crimes affecting corporations or their property. In all criminal prosecutions, an error in the name of the prosecutor, or of a third party when his name is material, is fatal. Wharton's Crim. Ev. sec. 94. When therefore a corporation is the prosecutor, or is the party so affected by the crime charged that its name becomes material to a proper statement of the offense in the indictment, its name must be correctly given and proved as alleged, and a variance between the allegation and proof will defeat the prosecution. Id. sec. 102 a.

The question as to said variance was properly raised by the defendant at the trial by objections to the evidence offered by the prosecution, and by a request to the court to give to the jury an instruction presenting it, and the point was expressly made by the defendant in his motion for a new trial, but the trial court held throughout that there was no variance, and exceptions to such holdings were duly preserved. We are of the opinion that the court was in error in this respect, and that there was in fact a fatal variance between the name of said corporation as laid in the indictment and as established by the evidence.

Counsel for the prosecution cite us to the act of June 3, 1889, to regulate proof in criminal cases, as bearing on the questions above discussed. That act provides: "That in all criminal prosecutions involving proof of the legal existence of a corporation, user shall be *prima facie* evidence of such existence." Laws of 1889, p. 115. It is sufficient to say that in this case the prosecution did not see fit to rely upon said act, even if the allegations of the indictment were such as to

admit of its so doing. The State's attorney, of his own motion, resorted to a higher order of proof, viz, the act of incorporation itself, and whatever may have been the *prima facie* force of proof of user, the charter constituted plenary and conclusive proof of the fact of corporate existence, and mere proof of user was no longer important or necessary. Furthermore, the material question here is not whether such corporation was in existence, as that seems to be conceded on all hands, but as to its corporate name, and the act only provides that user shall be evidence of the legal existence of the corporation, but in no way attempts to change the rules of evidence previously existing by which the corporate name, when in dispute, might be established.

We are of the opinion that, by reason of the variance between the allegations and proofs as to the corporate name of the corporation alleged to have been defrauded, the conviction can not be sustained. The judgment will therefore be reversed, and the cause remanded.

*Judgment reversed.*

Mr. Justice Magruder, dissenting:

I do not concur in the conclusion reached by this decision. A second jury have decided that the defendant is guilty of the charge made against him. He has been tried twice and twice found guilty. We reversed the judgment rendered against him on the first trial solely upon the ground that the trial court excluded certain evidence, which might have operated to mitigate the extent of his punishment. (*Sykes* v. *People,* 127 Ill. 117). The present opinion reverses the second judgment upon a mere technicality. That technicality has reference to the name of the Bank which the prisoner defrauded, and does not seem to me to warrant the result arrived at by the majority of the court.

The indictment charges the defendant with having defrauded "the Merchants' Loan and Trust Company, the same then and

there being a corporation organized and incorporated under and by virtue of the laws of the State of Illinois." The words "organized and incorporated under and by virtue of the laws of the State of Illinois" are mere surplusage. It is not essential that that which is surplusage should be strictly proved. It was sufficient to show that the institution defrauded was a corporation. (*Wallace* v. *The People*, 63 Ill. 451).

But let it be admitted that the State's Attorney was bound by the language of the indictment to prove the organization and incorporation of the Bank under and by virtue of the laws of the State of Illinois; he did furnish such proof. He produced the original charter issued by the Legislature in 1857 to the Bank under the name of the "Merchants' Savings Loan and Trust Company," and then introduced the proceedings under the Act of March 26, 1872, changing the name from the "Merchants' *Savings* Loan and Trust Company" to the "Merchants' Loan and Trust Company." The latter Act by its terms authorized such change of name, nor is it pretended that the proceedings taken to effect such change were not in strict accordance with the requirements of the Act. The charter of 1857 was a law of Illinois; the Act of 1872 was a law of Illinois. Therefore, the evidence showed that the defrauded Bank was "organized and incorporated under and by virtue of the laws of Illinois."

It is said, however, that the act of 1872 was unconstitutional as applied to banking corporations because it authorized amendments to banking laws without submitting such amendments to the votes of the People. This may be true, but such a consideration is entirely immaterial in this case.

The indictment averred that the Bank was organized under the laws of Illinois, not that it was organized under constitutional laws of Illinois. It was sufficient that the corporation defrauded should have been proven prima facie to be a *de facto* corporation, and its *de facto* character was established when it was shown to have been organized in accordance with

existing statutes, whether such statutes should or should not be held to be constitutional in proceedings instituted to test that question.

The evidence shows that the defendant dealt with the bank under the name of the "Merchants' Loan and Trust Company," borrowed money of it under that name, executed notes to it under that name, issued the warehouse receipts to it under that name: he is estopped from denying that it had such a name as he himself had already recognized and assented to by his conduct and repeated acts.

The question whether the bank has been doing business under a legal or illegal name, or in other words, the constitutionality of the Act of 1872, cannot be raised in this collateral suit. It can only be determined by a *quo warranto* proceeding. (*Hinze* v. *People*, 92 Ill. 406).

It makes no difference what technical rules in regard to indictments of this character may have been laid down in England or in other States. The statute of this State is our guide. The "Act to revise the law in relation to *quo warranto*," approved March 23, 1874, in force July 1, 1874, (Starr & Cur. vol. 2, page 1871, chap. 112, sec. 1) provides for the institution of a *quo warranto* proceeding by the Attorney General or the State's Attorney of the proper county, in case "any association or number of persons shall act within this State as a corporation without being legally incorporated, or any corporation * * * exercises powers not conferred by law."

The "Merchants' Loan and Trust Company" is an association which has been and is acting in this State as a corporation. The opinion of the majority assumes to decide that it has been acting without being legally incorporated. In a *quo warranto* proceeding as the statute directs? No, in a collateral suit, to-wit: a criminal prosecution against a man for defrauding that association out of money by issuing to it fraudulent warehouse receipts. The opinion also decides, in such collateral proceeding, that the Merchants' Loan and Trust Com-

pany is exercising the power as a corporation of doing business under an illegal name, that is to say, is exercising as a corporation a power not conferred by law. Is there any such proceeding before us as authorizes us to make any such decision as this? In giving the defendant the advantage of a trifling variation in nomenclature, are we not in effect trying a defrauded bank in violation of law?

The wisdom of the rule that the legality of a corporation or the legality of a power exercised by it can only be tested in a *quo warranto* proceeding, as such rule is laid down in *Barnes* v. *Suddard,* 117 Ill. 237 and other cases, may be illustrated by the consequences likely to flow from the present decision. It is an axiomatic principle of law that no person or corporation can be deprived of his or its rights without a day in court or a chance to be heard. In the *quo warranto* act, provision is made for issuing process, and serving the same upon the corporation, whose existence or powers are attacked. The latter may come in and answer and make defense. But such right of defense is cut off where the validity of the corporation is passed upon collaterally. In the present case, the Merchants' Loan and Trust Company is not a party to the proceeding. This is a suit between the State and Sykes. And yet the rights of the bank are adjudicated upon, and its corporate organization is declared to be invalid, without its presence in court and in the absence of any opportunity on its part to be heard in its own behalf. Is not this rank injustice? The legality of the incorporation of the bank is not a matter that concerns Sykes—it is a matter to be decided between the People and the bank in a proper proceeding instituted for that purpose.

The powers of the Attorney General and of the State's Attorneys are defined by law. Among such powers is the right to test the legality of corporate existence or corporate action by *quo warranto.* These officials are not given the right to make such test in any other proceeding. In the suit by *quo*

*warranto* the State's Attorney must represent the people as against the offending corporation. Here, however, the State's Attorney is forced to take the part of a bank against the people by defending a corporation alleged to have been illegally organized, and he is compelled to assume such attitude in the effort to sustain a criminal prosecution in behalf of the State for the issuance of false and fraudulent warehouse receipts.

Do we not by this decision say, in effect, to the plaintiff in error: "You have been convicted a second time of defrauding a bank out of more than $10,000.00, but inasmuch as the name of the bank contains two syllables less than it ought to have, the judgment against you is set aside?"