## The People of the State of Illinois, Defendant in Error, v. Dillie Carter, Plaintiff in Error.

1. Mines and minerals, § 47*—*when evidence sufficient to sustain conviction of mine examiner.* Conviction of a mine examiner for violation of the statute in failing to mark the mine, *held* sustained by the evidence.

2. Mines and minerals, § 47*—*when information need not aver mine examiner was "certificated."* Where an information charges a mine examiner with a violation of the statute in regard to marking the mine and avers that he was a certificated mine examiner, the averment that he was a "certificated" mine examiner is mere surplusage which the people are not required to prove.

Error to the County Court of Saline county; the Hon. Kenneth C. Ronalds, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 1, 1914.

M. S. Whitley, for plaintiff in error.

P. J. Lucey and Sam Thompson, for defendant in error.

Mr. Presiding Justice McBride delivered the opinion of the court.

The Eldorado Coal and Mining Company was on and prior to February 19, 1913, engaged in the business of mining coal at or near Eldorado. This coal company had in its employ two mine examiners, John Kay who examined the south part of the mine and Dillie Carter, the defendant, who examined the north part of the mine. At about seven o'clock of the morning of February 19th, and shortly after some of the men had gone down in the mine to begin their day's

work, an explosion occurred at or near the face of the third and fourth west entries of the main north, on the north side of the mine. As the result of this explosion four men were killed and much damage done. Shortly after the explosion occurred Frank Rossbottom, State mine inspector, arrived at the place and took charge of the mine and immediately began his investigation to determine the cause of the explosion. He had with him in his examination several other persons and they ascertained by this examination that the first and second west entries off of the north entry, and the third and fourth west entry off of the main north entry, and all rooms and working places of these entries bore no marks of having been visited and examined by the mine examiner on the 18th and 19th of February. The place that was ascertained by the inspector and others that had not been marked was a large section in the vicinity of the explosion and extended over about sixty working places. Marks of February 16th and 17th and some dates prior thereto were found in these working places but nothing on the 18th and 19th. It appears that the places were full of gas and the lights of the men coming down to work on the morning of the 19th came in contact with the gas which caused the explosion. After this examination complaint was filed against Dillie Carter, the defendant, charging him with having failed to mark the several working places above referred to and that in such failure he violated the statute. A trial was had which resulted in his conviction. This prosecution was commenced by an information filed in the County Court of Saline county, which information consisted of two counts, the first of which counts, omitting the formal parts charged: "That Dillie Carter on the nineteenth day of February, the year of our Lord one thousand nine hundred thirteen and on divers days prior thereto at and within the town of Eldorado in

said county of Saline, in said State of Illinois, afore-
said, being then and there a certificated mine examiner,
then and there required by law to examine the under-
ground workings of a certain mine commonly called
Seagraves Mine of the Eldorado Coal and Mining Com-
pany, a corporation, there situate, within twelve hours
preceding every day upon which said mine was to be
operated, being then and there required to inspect all
rooms and working places on the first and second west
entries off the main north entry in said mine and all
rooms and working places on the third and fourth west
entries off the main north entry in said mine and be-
ing then and there required as evidence of his said ex-
amination of said rooms and working places to in-
scribe in some suitable place on the walls of each of
said rooms and working places, not on the face of the
coal, with chalk the month and day of the month of his
visit.'' That he then and there wilfully failed to mark
said rooms and working places with the month and
day of the month of his visit, contrary to the statute.

The second count of the information is substantially
the same as the first except that a failure to mark said
places at the face is charged.

Several witnesses were examined on behalf of the
plaintiff below who testified to an examination of these
several places in a very short time after the explosion
and were unable to find any marks, and state that no
marks existed upon the sides of the rooms, roof or
other parts in the said working places showing a
visit and examination by the mine examiner in said
places, or any of them, on the 18th and 19th of Febru-
ary, 1913. There were, however, marks at the several
places showing a visit and examination by the mine
examiner on the 16th and 17th of February, and other
dates prior thereto. The examination appears to have
been carefully made by these several witnesses, in-
cluding the State and county mine inspectors, to ascer-

tain if any such marks had been made and the several witnesses state, with more or less certainty, that no such marks were found. There was no evidence introduced on behalf of the defendant at the trial. It was sought, however, by a searching cross-examination of the plaintiff's witnesses to throw doubt upon their testimony, but as we read the evidence of the several witnesses we are convinced that the jury were warranted in finding that a thorough examination had been made and that the defendant had failed to mark these several places as required by statute. Counsel for plaintiff in error in his argument in this court does not question the sufficiency of the evidence upon this point but does insist that as they failed to prove that the plaintiff in error was a certificated mine examiner he could not be convicted under the charge contained in this information. The principal error relied upon by counsel for plaintiff in error to reverse this case is that as the information charged that Dillie Carter, "being then and there a certificated mine examiner then and there required by law to examine the underground workings of a certain mine, etc.," was a material averment and not being proved that the court erred in not directing a verdict for plaintiff in error. We have examined this question with considerable interest and do not believe that the averment of being a *certificated* mine examiner is material but that this word is mere surplusage and need not be proved. The statute requires "A certificated mine examiner shall be required at all coal mines." It then provides that the operator of the mine shall have the underground workings of the mine examined by a certificated mine examiner within twelve hours preceding every day upon which the mine is to be operated. It also provides that certificated mine examiners shall not be required for the examination preceding the night shift except in specified cases, and that the mine manager

may, in the absence of the mine examiner, examine the mines, and that under certain conditions other persons may examine. When the statute comes to prescribe the duty of the mine examiner it apparently makes no distinction between a certificated mine examiner or other mine examiner, and is as follows: (b) "It shall be the duty of the mine examiner to examine the underground workings of the mine within twelve hours preceding every day upon which the mine is to be operated;" and then follows several provisions with reference to his duties; among them is one requiring him as evidence of his examination to inscribe upon the walls with chalk certain marks.

The evidence in this case shows clearly that Carter assumed the office and duties of mine examiner of this mine and undertook to perform these duties and having, "at the time of the acts complained of, assumed to be such officer and was exercising the powers and duties of the office. The People were therefore not bound to allege or prove that he was a *de jure* officer." *People v. McCann*, 247 Ill. 145. The word "certificated" was not a necessary description of the person or class of persons who might violate this statute. All that was necessary under the statute to allege was that the mine examiner failed to mark the room as required. "Where the indictment charges all the elements essential to an offense under a statute, other matter unnecessarily added may be rejected as surplusage." 22 Cyc. 370. In the case of *People v. Mackin*, 159 Ill. App. 125, the Court says: "The averment that Mackin was connected with and interested in the management of the place described may therefore be disregarded as surplusage, as it is not descriptive of the offense charged in the language of the statute that he visited the place and was found therein." In the case of *Sutton v. People*, 145 Ill. 285, the indictment charged Sutton with rape and averred: "And the

said Frank Sutton, then and there being a male person of the age of fourteen years and upwards, etc." This averment was held to be surplusage and that the People were not bound to prove it, and the Court in commenting upon this says: "This indictment would, therefore, have been good under the first division of the statute above quoted, without the averment as to the age of the plaintiff in error, and hence that averment might have been stricken out as surplusage. Wharton on Criminal Law, vol. 1, sec. 622; *Mobley v. State*, 46 Miss. 501; *Durham v. People*, 4 Scam. 172. That averment being surplusage, the People were not bound to prove it."

As we understand counsel for plaintiff in error, it is conceded that it was not necessary to make the averment of *certificated* mine examiner but having made it he must prove it, and much reliance is placed upon the case of *Sykes v. People*, 132 Ill. 32. The case cited was where the defendant was charged with having sought to defraud one corporation and the proof showed an entirely different corporation. We do not regard this case as decisive of the question under consideration. We are of the opinion that it was not necessary to aver or prove that the plaintiff in error was a certificated mine examiner. It appears clearly from the evidence that he was a mine examiner and this is all that the defendant in error was required to allege or prove.

It is further contended that some of the evidence introduced on behalf of the People as to the condition of the walls, with reference to marks having been made several days after, was too remote. There was sufficient evidence, however, as to the condition of the walls immediately after the explosion, and it further appears to some extent that the rooms and places were in the same condition at the time of the remote examination complained of as they were immediately

after the explosion, so far as the marks upon the walls were concerned.

Complaint is made of instruction No. 2 given on behalf of the People in, "That it undertakes to tell the jury that the leading and controlling question in the case is adopting his own theory of the case and leaving all others in the background." We are unable to understand what counsel means by this criticism unless it is that it should have included as one of the necessary elements to be proved that defendant was a *certificated* mine examiner. This criticism, as well as the one made upon plaintiff's third, fourth and fifth and defendant's second instruction, is based upon the proposition that to constitute a violation of the statute it must appear that defendant was a *certificated* mine examiner, which has been disposed of adversely to contention of counsel.

The eighth instruction given on behalf of the People is not very accurately drawn. It would have been better to have advised the jury that "such facts and circumstances" should have been of a character to satisfy their minds of defendant's guilt beyond a reasonable doubt, but this expression is so often repeated in the instructions that the jury could not have been misled.

The criticism upon instruction No. 9, that it is somewhat in the nature of an argument, is well taken but the instruction does not direct a verdict, and so far as we can see did not prejudice defendant's interest, and no such prejudice has been pointed out to us by counsel.

The criticism upon instruction No. 10 is not well taken. This instruction requires the facts and circumstances referred to should establish his guilt beyond a reasonable doubt.

The fourteenth instruction has been substantially approved by the Supreme Court.

The criticism upon the seventeenth instruction is without merit, as the jury certainly knew and appreciated that they were acting each for himself ''upon his oath'' in all they did.

After a careful review of all the testimony offered in this case we are of the opinion that the jury were warranted in finding that Dillie Carter had failed to perform the duties required of him as mine examiner, and as we find no reversible error in this record we see no reason to disturb the judgment of the lower court, and the judgment is affirmed.

*Judgment affirmed.*