THE ITALIA AMERICA SHIPPING CORPORATION *et al.* Appellees, *vs.* OSCAR NELSON, Auditor of Public Accounts, *et al.* Appellants.

*Opinion filed October 28, 1926—Rehearing denied Dec. 14, 1926.*

1. BANKS—*act of 1923 regulating business of foreign exchange does not amend Banking law.* The act of 1923 "in relation to the buying and selling of foreign exchange," while it may tend to increase the exchange business of banking corporations because of the restrictions it imposes on such business of other corporations, does not amend the Banking law nor increase or enlarge the powers of banking corporations, since prior to the passage of the act it was within the scope of the ordinary functions of a bank to deal in foreign exchange and money.

2. STATUTES—*general rule as to when provisions of act are embraced in title.* The purpose of the constitutional provision that no act shall embrace more than one subject is to prevent the joining in one act of incongruous and unrelated matters, and if all the provisions of an act relate to one subject indicated in the title and are parts of it, incident to it, reasonably connected with it or in some reasonable sense auxiliary to the object in view, the provision of the constitution is observed.

3. SAME—*what is meant by the "subject" of an act.* The subject of an act, as the term is used in the constitution, signifies the basis or principal object of the act, including matters growing out of and germane to said object, and any matter or thing which may reasonably be said to be subservient to the general subject or purpose will be germane to and properly included in the law.

4. SAME—*penalty incident to enforcement of regulatory act is proper though not mentioned in title.* Where the title of an act is so limited or is of such a character as to give no hint that it is regulatory or so as to reasonably lead to an inquiry into the body of the bill, those portions of the act which provide a penalty will be held invalid as violating the constitutional provision that an act can have but one subject, which must be expressed in the title, but when the title is general and of such a nature that the natural inference is that the act is regulatory and that penalties are a proper incident to its enforcement, the constitutional limitation is not violated.

5. SAME—*valid construction will be adopted, if possible.* If a statute is susceptible of two constructions, one of which will render it unconstitutional and the other constitutional, that construction will be adopted which sustains the validity of the act.

6. CONSTITUTIONAL LAW—*the act of 1923 regulating foreign exchange business is not invalid in including a penalty.* The act of 1923 "in relation to the buying and selling of foreign exchange" does not violate section 13 of article 4 of the constitution in fixing a penalty for violation of its provisions, as the act is clearly regulatory in character and cannot be made effective without the imposition of a penalty for failure to comply with its provisions and the penalties imposed are directly related to carrying the act into effect.

7. SAME—*provision of act of 1923 authorizing State Auditor to make investigation at expense of licensee doing foreign exchange business is invalid.* The provision of the act of 1923 regulating the business of buying and selling of foreign exchange which authorizes the Auditor of Public Accounts, at the expense of the licensee, to investigate the action of any licensee under the act violates the constitutional provisions for due process of law and against the taking of property without compensation, but the invalid provision does not affect the validity of the remainder of the act.

8. SAME—*when an act does not confer judicial power.* As the legislature cannot deal with the details of every particular case, the manner of executing a law may in certain cases be left to the reasonable discretion of administrative officers, and the exercise of that discretion does not constitute the exercise of judicial power.

9. SAME—*power to issue or revoke licenses may be delegated to administrative agency.* An administrative agency empowered to issue and revoke licenses to engage in certain businesses or professions must necessarily exercise *quasi* judicial powers in determining whether a license shall be issued or revoked, but the exercise of such power does not violate article 3 of the constitution, as it is only incidental to the duty of administering the law relating to the regulation of the particular business or calling.

10. SAME—*the act of 1923 for licensing business of foreign exchange does not confer judicial power.* The act of 1923 authorizing the Auditor of Public Accounts to issue or revoke licenses to engage in the business of buying or selling foreign exchange does not confer judicial power, as the grounds for issuing or revoking a license are specified in the act; nor does the act violate due process of law in not providing for an appeal from the Auditor's decision, as parties are entitled to *mandamus* should the Auditor act arbitrarily in denying or revoking a license.

11. SAME—*what constitutes due process of law.*  As there is no vested right in any particular remedy or form of proceeding due process of law does not necessarily imply judicial proceedings, and a general law administered in its legal course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting all persons alike, is due process.

12. SAME—*provision of act of 1923 requiring surety company bond of applicant for license to conduct foreign exchange business is valid.*  The provision of the act of 1923 that an applicant for a license to engage in the business of buying and selling foreign exchange shall give a bond "with a solvent and responsible surety company  *  *  *  as surety thereon" is valid, as no individual has an inherent right to be accepted as surety upon a bond, but bonds are always subject to the approval either of the party to whom given, a court or some administrative agent, and the conditions of the bond as specified in the act are properly adapted to secure the honest performance of the duties of a licensee in the foreign exchange business.

13. SAME—*legislative power is inherent in General Assembly.*  All legislative power is vested in the General Assembly subject to limitations imposed by the State and Federal constitutions, and every subject within the scope of civil government and which is not within a constitutional inhibition may be acted upon.

14. SAME—*courts will not inquire into reasonableness of legislative act.*  Where the power to act is vested in the legislature and the means it chooses are reasonably calculated to subserve the exercise of the power, courts will not inquire whether the legislature in exercising the power acted wisely or not; and such action can not be set aside on the ground that it is unreasonable, as it is not within the province of the courts to pass on the reasonableness of an act of the General Assembly.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

OSCAR E. CARLSTROM, Attorney General, WILLIAM C. CLAUSEN, GEORGE E. DIERSSEN, and MONTGOMERY S. WINNING, for appellants.

DENEEN, HEALY & LEE, for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

The appellees, being firms, corporations, individuals and partnerships engaged in the business of buying and selling foreign exchange and the transmission or transfer of moneys to foreign countries, filed their amended bill of complaint in the circuit court of Cook county praying the court to declare unconstitutional and void an act entitled "An act in relation to the buying and selling of foreign exchange and the transmission or transfer of money to foreign countries," approved June 28, 1923, (Laws of 1923, p. 277,) and that appellants, who are officers of the State of Illinois, be enjoined from enforcing the provisions thereof. Appellants filed a general demurrer to the amended bill of complaint, and, the demurrer being overruled, they elected to stand by the demurrer, and the court entered a decree finding the act unconstitutional and void, and ordered that a writ of injunction issue against appellants restraining and enjoining them from enforcing the provisions of the act against appellees. From this decree an appeal has been perfected to this court.

Appellees' first contention is that the act is an amendment to the act relating to banks and banking, which act is entitled, "An act to revise the law in relation to banks and banking," approved June 23, 1919, and ratified by vote of the people on November 2, 1920, and that being such amendment and not having been submitted to a vote of the people, as required by section 5 of article 11 of the constitution of the State of Illinois, it is therefore unconstitutional and void. The basis for this contention seems to be that the powers of banking corporations are increased or enlarged by reason of their exception from the provisions of the act. While the passage of this act may have a tendency to increase the amount of business done by banking corporations by reason of its restrictions upon other corporations, the act does not increase or enlarge the powers

of banking corporations, for the reason that prior to the passage of the act it was within the scope of the ordinary functions of a bank to deal in foreign exchange and money. *Wedesweiler* v. *Brundage*, 297 Ill. 228.

It is contended by appellees that the act embraces more than one subject although the title contains but one subject, and that the body of the act contains provisions not covered by or expressed in the title, and that for these reasons it is void as violating section 13 of article 4 of the constitution, which provides that no act "shall embrace more than one subject, and that shall be expressed in the title." The specific objection is, that while the title gives no hint that penalties are included, section 7 of the act creates a new crime by providing that "whoever violates any provision of this act, upon conviction thereof shall be fined not less than $100 nor more than $1000, or be imprisoned in the penitentiary for not less than one year nor more than ten years, or both such fine and imprisonment, and in addition thereto, his license shall be revoked by the Auditor of Public Accounts." The constitutional provision in question has been uniformly construed liberally in favor of the validity of enactments. To render a provision in the body of an act void as not embraced in the title such provision must be incongruous with the title or must have no proper connection with or relation to the title. (*People* v. *McBride*, 234 Ill. 146.) If all the provisions of an act relate to one subject indicated in the title and are parts of it or incident to it or reasonably connected with it or in some reasonable sense auxiliary to the object in view, then the provision of the constitution is obeyed. The word "subject," as used in the constitution, signifies the basis or principal object of the act. It may contain many objects growing out of and germane to it. Any matter or thing which may reasonably be said to be subservient to the general subject or purpose will be germane and properly included in the law, and the law will not, by reason of such inclusion, be rendered un-

constitutional as embracing more than one subject. (*People* v. *Newcom,* 318 Ill. 188.) While the word "regulate" is not found in the act, a perusal of the act shows that the purpose of the act is to regulate the business of buying and selling foreign exchange and the transmission or transfer of money to foreign countries, and that as such regulatory measure it could not be made effective without the imposition of a penalty for a failure to comply with its provisions.

The purpose of the constitutional provision that no act shall embrace more than one subject is to prevent the joining in one act of incongruous and unrelated matters. An act may contain any number of provisions which tend to further its purpose. The penalties imposed by this act are directly related to carrying it into effect, and the act is not rendered unconstitutional as embracing more than one subject by reason thereof. Where the title of an act is so limited or is of such a character as to give no hint that it is regulatory or so as to reasonably lead to an inquiry into the body of the bill, those portions of the act which provide a penalty will be held to be obnoxious to this provision of the constitution and void, (*People* v. *Clark,* 301 Ill. 428,) but when the title of an act is general and is of such a nature that the natural inference is that the act is regulatory and that penalties are a proper incident to its enforcement the constitutional limitation is not violated. The natural inference which any person reading this title would draw therefrom would be that the act will in some way be regulatory, with penalties incidental thereto.

Section 4 of the act provides: "The Auditor of Public Accounts may upon his own motion, and shall upon the verified complaint in writing of any person, investigate the action of any licensee hereunder, and the entire expense of such an investigation shall be borne by the licensee." It is contended by appellees that this provision is a violation of section 2 of article 2 of the State constitution and section 1 of article 14 of the United States constitution, in depriv-

ing appellees of their property without due process of law and in taking the same for private or public use without compensation. While the business of dealing in foreign exchange is *quasi* public in character, and, like banking, insurance and other businesses of like nature, is a legitimate subject for proper governmental inspection, the expense of which should rightfully be borne by the proprietor of the business, this is not a provision for such governmental inspection. Under it a licensee, no matter how honest in the conduct of the business or how careful in guarding against infractions of the law, could be compelled to pay large sums for the investigation of groundless or malicious complaints. While the business is impressed with a public interest, its property cannot be applied to the use of another or the public without violation of the constitutional inhibition. When this provision is stricken out the portion of the act which remains is complete in itself and capable of being executed wholly independently of that which is rejected, and the invalidity of this provision does not, therefore, render the entire act invalid, as there is no presumption that the General Assembly would not have enacted the remainder of the statute without this provision. *Weksler* v. *Collins,* 317 Ill. 132.

It is contended by appellees that the act is unconstitutional in that it attempts to confer judicial powers upon the Auditor of Public Accounts. Under the act the Auditor may revoke or suspend a license for conviction of a felony; for obtaining or attempting to obtain a license by fraudulent misrepresentations; for fraud or dishonesty in any transaction relating to such business; for failure to keep authentic records of business transactions, as required; for failure to issue a proper receipt for all money accepted for exchange or transmission; or for failure to transmit money within the time required. By article 3 of the constitution of the State it is provided that the powers of the government of the State be divided into three distinct depart-

ments,—the legislative, executive and judicial,—and no
person or collection of persons being one of these depart-
ments shall exercise any power properly belonging to either
of the others, except as therein expressly directed or per-
mitted.   The legislative department determines what the
laws shall be; the judicial department construes and applies
the law; the executive department executes or administers
it.   Legislative power is the power to enact laws or declare
what the laws shall be; judicial power is the power which
adjudicates upon the rights of citizens and to that end con-
strues and applies the law.   The legislature cannot deal with
the details of every particular case, and the manner of exe-
cuting a law must necessarily be left to the reasonable dis-
cretion of administrative officers, and the exercise of that
discretion does not constitute the exercise of judicial power.
(*Mitchell* v. *Lowden,* 288 Ill. 327; *Board of Education* v.
*Board of Education,* 314 id. 83.)   Administrative and ex-
ecutive officers are frequently called upon, in the perform-
ance of their duties, to exercise judgment and discretion,
to investigate, deliberate and decide, and yet it has been held
that in so doing they do not exercise judicial power within
the meaning of the constitutional provision.   (*State* v. *Illi-
nois Central Railroad Co.* 246 Ill. 188; see p. 231.)   An
administrative agency empowered to issue and revoke li-
censes to engage in certain businesses or professions must
necessarily exercise *quasi* judicial powers in determining
whether a license shall be issued or revoked, but this exer-
cise of *quasi* judicial power is only incidental to the duty
of administering the law relating to the regulation of a
particular business or calling, and in so doing it is not ex-
ercising judicial power within the meaning of the constitu-
tional provision.   (*People* v. *Apfelbaum,* 251 Ill. 18; *Klaf-
ter* v. *State Board of Examiners,* 259 id. 15; *People* v.
*Brady,* 268 id. 192; *People* v. *Stokes,* 281 id. 159.)   The
power of revocation conferred upon the Auditor of Public
Accounts is not an arbitrary one, as it can only be exercised

for certain causes specified in the act.   The character of the records to be kept and the kind of receipts to be given are described in the act, and it requires the exercise of no judicial function to determine whether or not there has been a compliance with these requirements.   Neither does the provision for the revocation of a license deprive the licensee of his property without due process of law by reason of the absence of a provision for an appeal or review of the decision by a court.   Due process of law does not necessarily imply judicial proceedings.   Orderly proceedings according to established rules which do not violate fundamental rights must be observed, but there is no vested right in any particular remedy or form of proceeding.   A general law administered in its legal course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting all persons alike, is due process.   (*People* v. *Apfelbaum, supra.*)   If the Auditor should act arbitrarily or without authority of law in denying a license or revoking the same, *mandamus* will lie to compel the issuance of the license or its restoration.

It is contended by appellees that the provision of the act that the application for a license shall "be accompanied by a bond of applicant with a solvent and responsible surety company   *   *   *   as surety thereon," grants to surety companies special and exclusive privileges, in violation of section 22 of article 4 of the constitution of Illinois, and that by reason of this provision it is oppressive, unreasonable, partial in its application and unjustified by the object sought to be accomplished.   The business of dealing in foreign exchange is impressed with a public interest and subject to governmental regulation.   No individual has an inherent right, in any case, to be accepted as surety upon a bond, but bonds are always subject to the approval either of the party to whom given, a court or some administrative agent.

While the right of the legislature to require a surety company bond in cases of this character has never been before this court it has been passed upon by the courts of last resort of other States. In *Jitney Bus Ass'n* v. *Wilkesbarre,* 256 Pa. 462, an ordinance providing that all operators of jitney busses should furnish a surety company bond was held invalid. In that case the evidence showed that it was difficult to procure a bond of the character required from a surety company. The decision was evidently one of first impression, as the opinion states: "We know of no other instance in which, where security is required by law to be given, an attempt has been made to confine such security to surety companies to the exclusion of solvent and responsible personal securities."

In *Bolln* v. *North Platte Irrigation Co.* 19 Wyo. 542, a statute which contained a provision requiring a bond from some guaranty or surety company authorized to do business in the State was held unconstitutional. The statute there under consideration differed from the one here, as the court said: "The statute we are considering places it within the power of the half dozen surety companies authorized to do business in this State to prevent any ditch or canal company or other owners from letting a contract for the construction of any ditch, canal or reservoir except under the penalty of becoming personally liable for the unlimited debts of others, for those which have not gone into the work and due to persons with whom the owner has no contractual relations."

In *State* v. *Robins,* 71 Ohio St. 273, an act requiring that all bonds for the performance of official or fiduciary duties, with certain exceptions, should be executed by a surety company authorized by the laws of Ohio was held unconstitutional and void on the ground that the court had not been advised of any necessity for the abolition of personal security and the substitution therefor of corporate security, and the court was persuaded that the public wel-

fare did not require it.  This latter decision is criticised in *Ferguson-Hendrix Co.* v. *Fidelity and Deposit Co.* 140 Pac. 700, in which case the court calls attention to the fact that in the *Robins case* the court was passing upon a legislative and not upon a judicial question.  In the *Ferguson-Hendrix Co. case* it was held that an act making it unlawful for a commission merchant to engage in selling farm products on a commission without first obtaining a license therefor and giving a bond executed by a surety company authorized to do business in the State was a valid enactment.

In *Ex parte Sullivan,* 178 S. W. 537, the court held valid a requirement to give a surety company bond before doing business.

In *Ex parte Cardinal,* 150 Pac. 348, it was held that the requirement to give a surety company bond or a policy of indemnity insurance was a reasonable and valid exercise of the police power of the State for the protection of the public.

In *State* v. *Seattle Taxicab Co.* 90 Wash. 416, the court held an act requiring certain carriers, before carrying on business, to furnish a bond from a "good and sufficient surety company licensed to do business in this State," without a provision for substitutes of any kind, was not unconstitutional.

In *Auto Transit Co.* v. *Fort Worth,* 182 S. W. 685, it was held that while the provision of an ordinance regulating jitneys requiring a surety bond might necessitate the incurrence of an expense which the applicant for a license would not be able to bear, yet that was not of itself sufficient to make the ordinance unreasonable or invalid.

In *New Orleans* v. *LeBlanc,* 139 La. 113, an ordinance was upheld which provided, *inter alia,* that a bond to be furnished by a jitney operator should be executed by a surety company.

In *West* v. *City of Asbury Park,* 99 Atl. 190, an ordinance requiring owners of auto busses to file an insurance

policy in the sum of $5000 covering liability for personal injury was held not unconstitutional.

In the recent case of *Smallwood* v. *Jeter*, 244 Pac. 149, the court passed upon the constitutionality of an act requiring taxicabs and busses to obtain liability and property-damage insurance from an insurer licensed to furnish such insurance or a surety bond of a surety company. In reference to this requirement the court said: "It would serve no useful purpose to discuss at length the power of the legislature to limit the carrier to furnishing bonds of surety or insurance companies, only. Modern experience has brought into existence the surety and bonding companies for almost unlimited purposes. The results of loss to insured persons through other than surety bonds, and the power of the State to control, and the regulations adopted for the purpose of control of, bonding and insurance companies, with the resulting security to the insured, are persuasive reasons for supporting the wisdom of the legislature if it sees fit to require that a bond be given by such insurance or bonding company. The power to require a bond necessarily implies the power to establish the qualifications of the bondsman. The requirement violates no constitutional right of plaintiff."

While the decisions from other States are not uniform, the great weight of authority is to the effect that a statute requiring a bond from a surety company is not unconstitutional. The amount of the bond required is not so large as to be prohibitive, oppressive or unreasonable in view of the fact that the licensee is authorized to deal in foreign exchange to an unlimited amount.

The bond required by the instant statute must be conditioned "that licensee will pay all final judgments recovered against him growing out of the conduct of the business herein specified during the period for which the license is issued, and shall by its terms inure to the benefit of the person recovering any such judgment." It is contended by

appellees that the condition of this bond goes beyond the objects to be accomplished by the act, and that under the wording of the condition the surety could be held for any debt on which judgment is recovered arising out of the conduct of the business of the licensee, including judgments for rent, for supplies, for damages because of defaults of employees of the licensee for which no liability attached by common law or otherwise, and also charges for taxes, or for mechanics' liens, or for any liability which might arise in the ordinary and usual conduct of any commercial business. To so hold would place a strained construction upon the act. The liability in the bond covers only the liability of the licensee under the provisions of the act and is given only to secure the honest performance of the duties of the licensee as such. The law is well settled that if a statute is susceptible of two constructions, one of which would render it unconstitutional and the other constitutional, the construction should be adopted which will sustain its validity. The State constitution is not a grant of, but is a limitation upon, legislative power. All legislative power is vested in the General Assembly, subject to the restriction contained in the State constitution and the constitution of the United States. Every subject within the scope of civil government which is not within such constitutional inhibition may be acted upon by it. When the power to act is vested in the legislative department and the means it chooses are reasonably calculated to subserve the exercise of the power, the court will not inquire whether the legislature in delegating the power to the subordinate body selected to exercise it acted wisely or not, and such action cannot be set aside by the court on the ground that it is unreasonable, as it is not within the province of the court to pass on the reasonableness of an act of the General Assembly. (*People* v. *Dunne,* 258 Ill. 441; *Catholic Bishop of Chicago* v. *Village of Palos Park,* 286 id. 400; *Taylorville Sanitary District* v. *Winslow,* 317 id. 25; *People* v. *City of Chicago,* 321 id. 466;

*Fergus* v. *Marks,* 321 id. 510.)   The enactment of an act to regulate the business of foreign exchange was within the legislative power, and, except the provision requiring the entire expense of an investigation to be borne by the licensee, was within the scope of the power of the General Assembly, and the act, with the exception of that provision, is constitutional.

The court erred in overruling the demurrer to the amended bill of complaint and entering the decree against appellants.

The decree of the circuit court is reversed and the cause remanded to that court, with directions to sustain the demurrer and dismiss the bill for want of equity.

*Reversed and remanded, with directions.*