(No. 21919.—

THOMAS McQUEEN, Appellant, *vs.* HARRY L. RANDALL, Receiver, Appellee.

*Opinion filed June 22, 1933—Rehearing denied October 12, 1933.*

T. FRED LARAMIE, for appellant.

ALTHEIMER, MAYER, WOODS & SMITH, (WILLIAM F. STRUCKMANN, GEORGE W. STRUCKMANN, and JESSE L. COHEN, of counsel,) for appellee.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

This is an appeal from the circuit court of Cook county involving the constitutionality of "An act defining the relations between banks and their depositors with respect to

the deposit and collection of checks and other instruments payable in money," approved July 8, 1931. Cahill's Stat. 1931, chap. 16a, secs. 25-39, inclusive.

The facts are undisputed. McQueen, the appellant, is a contractor, and in November, 1931, was preparing to bid on some work for the United States. Bidders were required, under governmental regulations, to accompany their bids with certified checks. On November 7, 1931, the appellant drew a check for $1200 against his checking account in the Maywood State Bank, payable to the order of the treasurer of the United States. On December 15, 1931, he drew a second check against the same account for $150, payable to the same official. Both checks were certified by the bank and sent with the appellant's bids. On December 18, 1931, the State Auditor closed the bank for examination. Upon rejection of the appellant's bids his two certified checks were returned on December 23, 1931. A receiver was appointed for the closed bank on January 12, 1932, for the purpose of winding up its affairs. The appellant presented the certified checks to the receiver and asked to have them honored as a preferred claim against the assets of the bank. This the receiver refused to do, and the filing of the petition seeking a preference followed. In his answer the receiver denied that the checks had been presented to the bank prior to its closing and averred that they constituted only a general claim against the bank. A decree was finally entered by the lower court holding the above entitled act of 1931 unconstitutional and denying the preference sought by appellant. This appeal followed.

The claim of the appellant for a preference rests upon part of paragraph 2 of section 13 of the act of 1931, which reads: "When a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for busi-

ness as above, after having charged such item or items to the account of the maker or drawer thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

The appellee argues that the act is an amendment of the Banking act, and not having been submitted to a vote of the people is void under the provisions of section 5 of article 11 of the constitution. On the other hand, the appellant asserts that the act does not relate to the organization or creation of banking corporations or associations, is not an amendment of any such prior act, and that therefore the constitutional provision does not apply.

The title of the act confines it to the relations existing between banks and their depositors. It is expressly stated in the title that the act defines the relations between banks and their depositors, having to do with "the deposit and collection of checks and other instruments payable in money." No language is contained showing it to be an amendment of the Banking act. Equally clear is the fact that the General Assembly was not dealing with the organization or creation of banking institutions.

In *Reed* v. *People*, 125 Ill. 592, this court said that an act authorizing or creating corporations with banking pow-

ers must be submitted to a vote of the people. *Sykes* v. *People*, 132 Ill. 32, does no violence to that opinion. In the latter case a bank was chartered in 1857 (Private Laws of 1857, p. 82,) under the name of Merchants' Savings, Loan and Trust Company. In compliance with requirements of the act of March 26, 1872, providing for the change of names of corporations, (1 Starr & Curtis, 624,) the name of the bank was changed in 1881 to Merchants' Loan and Trust Company. This court held that an act changing or providing a mode for changing the name of a banking corporation which was already incorporated by the General Assembly under a specific name amounted in reality to an amendment of such incorporating act. It was there said: "The provision fixing the name of the corporation created is an essential part of the act and is an express legislative declaration that the corporate name shall be as there given. The identity of name is the principal means of effecting that perpetual succession, with members frequently changing, which is an important purpose of incorporation.'" It was a change, in a very essential particular, of the organic law of the corporation. Consequently, the act of March 26, 1872, was an amendment of the Banking act and was held unconstitutional because it was not submitted to a vote of the people, as required by constitutional mandate. The *Sykes case* is authority only under the particular facts involved.

The case of *Italia America Shipping Corp.* v. *Nelson,* 323 Ill. 427, challenged the constitutionality of the act of June 28, 1923, (Laws of 1923, p. 277,) which made it unlawful for any person, firm or corporation (with specific exceptions) to engage in the business of transmitting or transferring money to foreign countries, or buying and selling foreign money, or receiving money on deposit to be transmitted or transferred to foreign countries, without having a license to engage in such business. The law was charged to be an amendment of the Banking act, thereby

requiring the assent of the people before it could become valid. Corporations organized under the general .banking laws of Illinois or of the United States were excepted. We there held that inasmuch as banking corporations had the power, without the necessity of a license, to do that which the act prohibited others from doing without a license, the act did. not in any manner change the powers, rights, duties, privileges, liabilities or obligations of a bank as a corporate entity. Not being a banking act, the vote of the people thereon was not required.

The declarations in the *Italia case, supra,* must be read and interpreted in the light of what this court held in the later case of *People* v. *Gould,* 345 Ill. 288. The latter case, in so far as section 5 of article 11 of the constitution is concerned, is authority only for the rule of law that a statute making it a crime for bank officers to accept deposits when their institution is insolvent, (Act of 1879, as amended in 1903, Laws of 1879, p. 113; Laws of 1903, p. 156;) applies to officers of banking institutions organized under the Banking act of 1887 or 1919. (Laws of 1887, p. 89; Laws of 1919,. p. 224, as amended in Laws of 1923, pp. 158, 164; Smith's Stat. 1929, chap. 38, par. 61.) And the constitutional provision did not require the statute to be submitted to a vote of the people. The statute in question was not directed to banking institutions but to their officials. It was an exercise of the police power of the State for the protection of the rights of depositors. Reference was there made to section 5 of article 11 in the following language: "The section refers to the manner of organization of banking corporations, the privileges granted to them, the duties and obligations imposed upon them, the supervision, regulation and control of them by the Auditor, and not to the general rules of commercial law, the law of negotiable instruments, and the great mass of substantive law to which the Banking act makes no reference. * * * The legislature has the full power of legislation in regard

to the organization of corporations with banking powers. Its power of legislation in regard to banking corporations is not less than its legislative power in other matters. The only difference is, that while, ordinarily, its power is subject to the Governor's veto, which it may override by a two-thirds vote of all the members of both houses, in the matter of corporations with banking powers the veto of the people is absolute and may not be overcome. The statute for the organization of corporations or associations having banking powers the legislature cannot change or amend without the approving vote of the people."

When the act of 1879 for the protection of bank depositors was enacted no statute existed authorizing the organization of corporations for banking purposes, as the Banking act of 1851 had been repealed. As we stated in the *Gould case,* the act of 1879 "did not authorize or create any corporation or association with banking powers nor was it an amendment to any such act. * * * No right or duty, no power or privilege, no liability or obligation of any incorporated bank or banking association was added to or increased, subtracted from or diminished, or in any way affected by the law. The mutual rights of the bank and its depositors, legal or equitable, were in no respect changed by it."

Prior to the act of 1931 a general deposit in a bank to the credit of a depositor created only the relation of debtor and creditor. The deposit belonged to the bank and became a part of its general funds, and the liability created thereby was according to the usages and customs of the business. (*Kamfner* v. *Auburn Park Trust and Savings Bank,* 344 Ill. 200.) Section 2 of the act of 1931, (Cahill's Stat. 1931, chap. 16a, sec. 26,) to which the appellee refers in its argument, creates the relationship of principal and agent in the absence of special directions to the contrary. The section states that "where an item is deposited or received for collection, the bank of deposit shall be agent

of the depositor for its collection." The context of the section leaves no room for doubt that the relationship of principal and agent was meant to be created between the depositor and the bank.

Paragraph 1 of section 13 of the act in question (section 37) provides that if a check is presented to a bank for collection without instructions in regard thereto, and the bank makes the collection but does not remit the amount collected, a trust is established in favor of the party presenting the check for collection. In examining paragraph 2 of the same section we find that a preference is given to the holder of a certified check, a trust is established for the payment of the obligation, and it stands as a preferred claim. Under the law prior to the act of 1931 the holder could only make a general claim for payment of the obligation. This was based upon the then prevailing conception that the holder was, in effect, only a depositor of the bank and the relationship of debtor and creditor existed. A careful survey of the act of 1931 demonstrates that it does not make any attempt to change the primary obligation existing between a bank and its depositors under the subjects and conditions disclosed in the title of the act. That primary obligation is, that if the bank has possession of funds of its depositors it is legally bound to pay them over when demanded. The act of 1931 only changes the point (in time) respecting the deposit and collection of instruments payable in money when the bank gains title to the proceeds of such instruments. Under the old law the bank gained title to the instrument upon its deposit; now it does not gain title but obtains the instrument as an agent for the purpose of collection. When the proceeds have been collected by the bank and credited to the account of the depositor, then, and then only, do the proceeds become part of the general funds of the bank. Consequently the act of 1931, to again use what we said in the *Gould case,* does not add to or increase, subtract from or diminish, or

in any way affect a right, duty, power or privilege of any incorporated bank or banking association. As it was not an amendment to the Banking act, no reason existed for submitting the act of 1931 to a vote of the people.

The appellee takes the view that even though the act of 1931 is valid, the appellant cannot assert any right to preference under section 13 because he did not present the checks to the bank for payment. The appellant presented the checks to the receiver and asked that he honor them as a preferred claim against the bank. Paragraph 2 of section 13 says: "When a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawer thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor, * * * the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items." The phrase, "shall fail or close for business as above," refers in point of time not to the time of presentment for payment but to the succeeding phrase, commencing, "after having charged such item or items," etc. When the appellant had his two checks certified the appellee charged them to the appellant's account, but the checks were not paid in money. By thus charging the appellant's account with the amount of the two checks, the sum was, in effect, taken from his account and held by the appellee in trust for the legal holder of the two checks, to be paid to such holder when the certified checks were later presented for payment. That the appellant was the holder does not alter the rule. Although in a state of suspension, the bank was nevertheless in existence when the two checks were presented to the receiver to be hon-

ored as a preferred claim. Such presentment, we must hold, is presentment for payment under the intent of section 13 of the act. By presenting his checks to the receiver the appellant took the only means of collection available to him under the circumstances. The bank was in process of liquidation, no money was being paid out upon demand, and the appellant ascertained, as he must, just how his claim was regarded.

For the reasons assigned the decree of the circuit court of Cook county is reversed and the cause is remanded to that court, with directions to enter a decree in accord with this opinion. *Reversed and remanded, with directions.*