(No. 2821—

KARL A. GLOVER, RECEIVER OF THE FIRST NATIONAL BANK OF LAWRENCEVILLE, ILLINOIS, A NATIONAL BANKING CORPORATION OF LAWRENCEVILLE, ILLINOIS, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 11, 1937.*
*Rehearing denied May 12, 1937.*

SUMNER & LEWIS, for claimant; WILLIAM MCKINLEY, of counsel.

JACOB LOGAN FOX, *Amicus Curiae.*

OTTO KERNER, Attorney General, and A. B. DENNIS, GLENN A. TREVOR and JOHN KASSERMAN, Assistant Attorneys General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

From the stipulation filed herein by the parties to this cause, the following facts appear:

Prior to and on November 1st, 1931 The First National Bank of Lawrenceville, a national banking association, was engaged in the banking business in the City of Lawrenceville, in the County of Lawrenceville, and State of Illinois. On the last mentioned date, Edward J. Barrett, State Treasurer of the State of Illinois, deposited in said bank $45,000.00 belonging to the State of Illinois, and in his possession as such Treasurer, and thereupon said bank issued to such Treasurer six (6) certificates of deposit in the usual form, in the total principal sum of $45,000.00; each certificate being payable to order of Edward J. Barrett, State Treasurer, or his successors in office, on the return thereof, properly endorsed, with 2 per cent interest per annum payable monthly, and bearing on the face thereof the following notation, to wit, ''The right to demand five days notice of payment is reserved. Not subject to check.''

At the time of making such deposit, said bank deposited with and delivered to said treasurer certain assets belonging to said bank, including certain State of Illinois 4 per cent Highway Bonds, due 1946-1959, of the total par value of $50,000.00, all of which assets were put up as collateral and pledged to secure the repayment of the aforementioned deposit. At the same time said bank and said treasurer entered into a contract which provided, among other things, that if, in the judgment of said treasurer, said collateral, or any part thereof, should become depreciated in value, said treasurer should have the right immediately to declare the entire amount of said deposit to be due and payable; and to sell all of said collateral at public or private sale, without notice to said bank, and apply the proceeds, after deducting the necessary costs and expenses, to the payment of the amount owing to such treasurer, whether due or not, and return the surplus, if any, to said bank.

On August 20th, 1932 said bank became insolvent and ceased doing business, and on August 22d, 1932 the Comptroller of the Currency of the United States appointed one J. B. Reid Receiver for said bank. Reid accepted said appointment and continued to act as such receiver until March 15th, 1934, at which time he resigned. Thereupon said Comptroller appointed the claimant, Karl A. Glover, as receiver of said bank. Glover duly qualified as such receiver, and has been since the date of his appointment and is now the duly qualified and acting receiver of said bank.

On August 23d, 1932 the aforementioned State Treasurer demanded of said bank the repayment of said deposit of $45,000.00, and advised said bank that if payment was not received, and the margin became impaired, he would sell the aforementioned collateral to protect said deposit.

On August 25th, 1932 J. B. Reid, then receiver of said bank, advised said treasurer that he was not in position to remit the amount demanded.

On September 26th, 1932 said Comptroller of the Currency authorized said receiver to consent to the sale of the aforementioned State of Illinois Highway Bonds by said State Treasurer to secure sufficient funds to liquidate said deposit, with accrued interest.

On September 29th, 1932 said receiver notified said treasurer that the Farmers State Bank of Lawrenceville, Illinois, was sending him a draft for $50,593.34 in payment of said State of Illinois Highway Bonds of the par value of $50,000.00, including interest, and directed said treasurer to retain the amount due him, and deposit the balance, to wit the sum of $5,443.34 in the First National Bank of St. Louis to the account of said receiver.

Said draft was duly received by said treasurer, the sum of $45,150.00 was retained by him in repayment of the aforementioned deposit and interest, and the balance, to wit, $5,443.34, was deposited by said treasurer in the First National Bank of St. Louis to the account of said J. B. Reid, receiver, in accordance with the instructions of said receiver.

On October 5th, 1932 the account of said treasurer with said bank was closed; the certificates issued by said bank evidencing the aforementioned deposit, were returned to said receiver for cancellation, and thereafter the remaining

securities held by said treasurer as collateral for said deposit were re-delivered by said treasurer to said receiver.

Claimant takes the position that the First National Bank of Lawrenceville had no power or authority to pledge its assets to secure deposits of State money; that said pledge was illegal and void; and that therefore the State is liable to the receiver of said bank for the difference between the amount the State Treasurer received by reason of the sale of the pledged assets, and the amount such treasurer would have received if said assets had not been pledged, and he had been required to participate in the distribution of the proceeds of such bank as a common creditor.

The respondent takes the position that said bank had full power and authority to pledge its assets to secure the deposit in question, and relies upon the amendment to Section 45 of the National Bank Act (12 U. S. C. A. sec. 90; U. S. R. S. sec. 5153) and Sections 1, 10 and 12 of an Act entitled "An Act in Relation to State Moneys," approved June 28th, 1919, in force July 1st, 1919, commonly known as the State Depositary Act, (State Bar Assn. Stat. 1935, Chap. 130, par. 20, 29 and 31) which said sections provide as follows:

*National Banking Act:*

"Any association, may, upon the deposit with it of any public money of a State or any political subdivision thereof, give security for the safekeeping and prompt payment of the money so deposited, of the same kind as is authorized by the laws of the State in which such association is located in the case of other banking institutions in the State."

*State Depositary Act:*

"Section 1. That the State Treasurer shall deposit all money received by him on account of the State within five days after receiving the same in such banks of the State as may be autthorized to receive such deposits under the terms of this Act. The money so deposited shall be placed to the account of the State Treasurer."

"Section 10. No moneys in the State Treasury shall be deposited in any bank approved as a depositary under the terms of this Act unless such bank shall have deposited securities with the State Treasurer equal in market value to the amount of moneys deposited. The State Treasurer is authorized to enter into agreement in conformity with the provisions of this Act with any such depositary bank relating to the deposit of such securities."

"Section 12. All securities deposited by approved banks under the provisions of this Act shall remain the property of the banks depositing such securities. Should the depositary fail or refuse to pay over the moneys, or any part thereof, deposited with it, when due and payable,

the State Treasurer may sell such securities in accordance with the terms of any agreement between the State Treasurer and the depositary bank. Such sale shall transfer absolute ownership of the securities so sold to the vendee thereof. The surplus, if any, over the amount due to the State and the expenses of the sale shall be paid to the depositary. Actions may be brought in the name of The People of the State of Illinois to enforce the claims of the State with respect to any securities deposited by an approved bank."

Claimant contends that that portion of the State Depositary Act which provides in substance that no money in the State Treasury shall be deposited in any bank unless such bank shall have deposited securities with the State Treasurer equal in market value to the amount of the monies deposited, constitutes an amendment to the General Banking Act of this State; that inasmuch as said Depositary Act was not submitted to a vote of the people at the general election next succeeding the passage of the same, it is unconstitutional and void, being in violation of Section 5 of Article 11 of the Constitution of 1870, which provides that:

"No Act of the General Assembly authorizing or creating corporations or associations with banking powers * * * nor amendments thereto, shall go into effect or in any manner be in force unless the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same," etc;—

that inasmuch as there is no valid law of this State authorizing State Banks to pledge their assets to secure deposits of State money, national banks have no authority to pledge their assets to secure such deposits; that the pledge of its assets by the First National Bank of Lawrenceville was illegal; that the receiver therefore was entitled to the return of all of the pledged assets; and that the State Treasurer should have been considered only as a general creditor of said bank.

The respondent contends that the State Depositary Act does not constitute an amendment of the General Banking Act of this State, and that therefore the aforementioned constitutional provision has no application to such Act.

The respondent further contends that even though such enactment be held illegal, nevertheless, under the laws of this State, the claimant is not entitled to maintain its action in this behalf, and sets forth in its brief and argument numerous propositions and authorities in support of such contention.

The first question for consideration, therefore, is the question of the validity of the aforementioned Act commonly

known as the State Depositary Act. If such Act is not subject to the objections raised, the claimant has no right to recover in this proceeding. If such Act is subject to the objections raised by the claimant, it is unconstitutional and void and it will then become necessary to consider the other contentions made by the respondent.

The question now under consideration may therefore be stated briefly as follows: *Does the State Depositary Act constitute an amendment of the General Banking Act of this State?*

So far as we have been able to learn, this question has never been presented to or passed upon by the Supreme Court of this State.

The respondent claims that the State Depositary Law has been impliedly held constitutional by the Supreme Court of the United States, and by the Supreme Court of Illinois, and relies upon the case of *Marion* vs. *Sneeden,* 291 U. S. 269, and the cases of *Nelson* vs. *Colegrove & Co. State Bank,* 354 Ill. 408, and *People* vs. *Wiersema State Bank,* 361 Ill. 85, in support of its claim. The State Depositary Act was referred to, and the existence thereof as a law of this State was recognized by the court in each of such cases, but in neither case was the constitutionality of the Act drawn in question, and consequently anything said by either court with reference to such Act, cannot be considered as a determination of the constitutionality thereof.

Claimant concedes that not every law which affects banks constitutes an amendment to the Banking Act, within the constitutional prohibition, and although it contends that the Depositary Act constitutes such an amendment, it does not specify what section or sections are amended thereby.

The first General Banking Act of this State subsequent to the adoption of the Constitution of 1870 was passed in 1887. Several amendments were made thereto, and in 1919 the General Assembly adopted "An Act to Revise the Law in Relation to Banks and Banking," which expressly repealed the Act of 1877 as amended. The Act of 1919, as thereafter amended, is still in force.

The question as to whether the provisions of certain laws enacted by the Legislature constitute amendments to the

General Banking Act, has been considered by our Supreme Court in the following cases, to wit:

> *Reed* vs. *People,* 125 Ill. 592.
>
> *Sykes* vs. *People,* 132 Ill. 32.
>
> *Italia America Shipping Corporation* vs. *Nelson,* 323 Ill. 427.
>
> *People* vs. *Gould,* 345 Ill. 288.
>
> *McQueen* vs. *Randall,* 353 Ill. 231.
>
> *People* vs. *Dennhardt,* 354 Ill. 450.
>
> *People* vs. *First State Bank & Trust Co.,* 364 Ill. 294.

A review of such cases will be helpful in solving the question before us.

The case of *Reed, et al* vs. *The People ex rel,* 125 Ill. 592, involved the constitutionality of an Act of the General Assembly adopted in 1887, entitled ''An Act to provide for the organization of Savings societies, or institutions for savings, for their supervision, and for the administration of their affairs''. It was contended that such Act authorized the creation of corporations having banking powers, and that the same was therefore an amendment of the General Banking Act. Upon consideration of the several provisions of the Act the court said:

"Under the sections of the Act we have referred to, the corporation is invested with full power to receive money on deposit, and to discount notes. These are banking powers, as has been abundantly shown."

The court therefore held the Act there in question to be an amendment to the General Banking Act, and inasmuch as the same had not been submitted to a vote of the people, it was unconstitutional and void.

The case of *Sykes* vs. *The People,* 132 Ill. 32, involved the following facts: The Merchants' Savings Loan and Trust Company was organized under the provisions of a private Act of the General Assembly approved January 28th, 1857 entitled ''An Act to incorporate the Merchants' Savings Loan and Trust Company'', which Act, among other things, conferred upon such corporation banking powers. Thereafter the name of the corporation was changed to ''The Merchants Loan and Trust Company'', in accordance with the provisions of an Act of the General Assembly entitled ''An Act to provide for changing the names * * * of incorporated companies'', etc., approved and in force March 26th, 1872. It was

contended that the latter Act constituted an amendment of the previous Act, and that it was null and void for the reason that it had not been submitted to a vote of the people in accordance with the foregoing constitutional provision. In that case the court said:

"The provision fixing the name of the corporation created is an essential part of the Act and is an express Legislative declaration that the corporate name shall be as there given. 'The identity of name is the principal means of effecting that perpetual succession, with members frequently changing, which is an important purpose of incorporation.' * * *

"Any act therefore, which provides that a corporation shall or may take another name, changes in an essential particular the organic law of such corporation and is therefore necessarily an amendment thereto. * * * The charter of said corporation being an Act, creating a corporation with banking powers, within the meaning of the constitutional limitation above cited, was not subject to amendment except by an Act properly submitted to and adopted by the people of the State at a general election."

In the case of *Italia America Shipping Corporation* vs. *Nelson*, 323 Ill. 427, the complainants were engaged in the business of buying and selling foreign exchange and the transmission or transfer of monies to foreign countries, and filed their amended bill of complaint in the Circuit Court of Cook County praying the court to declare unconstitutional and void an Act entitled ''An Act in relation to the buying and selling of foreign exchange and the transmission or transfer of money to foreign countries'', approved June 28th, 1923. The defendants filed a general demurrer to the complaint. The Supreme Court ordered the demurrer sustained and the bill dismissed, and in the course of its opinion said (p. 430):

"Appellees' first contention is that the Act is an amendment to the Act relating to banks and banking, which Act is entitled, "An Act to revise the law in relation to banks and banking," approved June 23, 1919, and ratified by vote of the people on November 2, 1920, and that being such amendment and not having been submitted to a vote of the people, as required by Section 5 of Article 11 of the Constitution of the State of Illinois, it is therefore unconstitutional and void. The basis for this contention seems to be that the powers of banking corporations are increased or enlarged by reason of their exception from the provisions of the Act. While the passage of this Act may have a tendency to increase the amount of business done by banking corporations by reason of its restrictions upon other corporations, the Act does not increase or enlarge the powers of banking corporations, for the reason that prior to the passage of the Act it was within the scope of the ordinary functions of a bank to deal in foreign exchange and money."

In the case of *The People* vs. *Gould*, 345 Ill. 288, the defendants, who were the president and cashier of the Savings Bank of Kewanee, were indicted and convicted of receiving a deposit in said bank when the same was insolvent and when said defendants knew of said insolvency, contrary to the provisions of Section 1 of an Act entitled "An Act for the protection of bank depositors", approved June 4th, 1879, as amended in 1903.

A motion to quash the indictment was made, and one of the grounds for such motion was that the Act upon which the indictment was based, was an amendment of the General Banking Act of this State, and that the same was null and void for the reason that it had not been submitted to a vote of the people, as required by the aforementioned constitutional provision.

After a very thorough consideration of the question, the court said (p. 294):

"This Act did not authorize or create any corporation or association with banking powers nor was it an amendment to any such Act. There was no such Act in existence in the State of Illinois to which the constitutional prohibition could apply except the special charters granted by the Legislature before the Constitution was adopted, and these charters were in no way affected by the Act. No right or duty, no power or privilege, no liability or obligation, of any incorporated bank or banking association was added to or increased, subtracted from or diminished or in any way affected by the law. The mutual rights of the bank and its depositors, legal or equitable, were in no respect changed by it. It acted only upon the individual "bank or broker, or person or persons doing a banking business, or any officer of a banking company or incorporated bank." The prohibition was to the individual. The responsibility was upon him and his was the punishment."

Also, on page 302:

"The subject matters of Section 5 of Article 11 of the Constitution is the organization of corporations or associations having banking powers. Whatever law may be passed on that subject must receive the approval of a vote of the people, and so must every amendment. * * * The section refers to the manner of organization of banking corporations, the privileges granted to them, the duties and obligations imposed upon them, the supervision, regulation and control of them by the Auditor, and not to the general rules of commercial law, the law of negotiable instruments, and the great mass of substantive law to which the banking Act makes no reference."

Also, on page 307:

"By no stretch of the imagination can the Act of 1879 be regarded as an amendment of the Act of 1919, under which the Savings Bank of Kewanee was incorporated."

The case of *McQueen* vs. *Randall*, 353 Ill. 231, involved the constitutionality of "An Act defining the relations between banks and their depositors with respect to the deposit and collection of checks and other instruments payable in money", approved July 8th, 1931.

McQueen was the holder of two checks which had been certified by the Maywood State Bank, which thereafter was closed by the Auditor of Public Accounts. McQueen filed a claim with the receiver of said bank, claiming a preference under the provisions of the aforementioned Act. The trial court held such Act unconstitutional, and allowed the claim as a general claim, and McQueen perfected an appeal to the Supreme Court. The case was thoroughly considered by the court and the previous cases of *Reed* vs. *People, Sykes* vs. *People,* and *People* vs. *Gould* were reviewed.

The court pointed out that the effect of the Act there under consideration was to change the relation between the bank and its depositors from that of debtor and creditor to that of principal and agent; and also pointed out that the effect of Section 2 of such Act was to establish a trust in favor of the holder of a certified check, and that the holder of such check thereby became a preferred creditor, whereas under the law in existence prior to the adoption of such Act, the holder of such check was only a general creditor of the bank. In that case the court said: .

"The appellee argues that the Act is an amendment of the Banking Act, and not having been submitted to a vote of the people is void under the provisions of Section 5 of Article 11 of the Constitution. On the other hand, the appellant asserts that the Act does not relate to the organization or' creation of banking corporations or associations, is not an amendment of any such prior Act, and that therefore the constitutional provision does not apply.

"The title of the Act confines it to the relations existing between banks and their depositors. It is expressly stated in the title that the act defines the relations between banks and their depositors, having to do with "the deposit and collection of checks and other instruments payable in money." No language is contained showing it to be an amendment of the Banking Act. Equally clear is the fact that the General Assembly was not dealing with the organization or creation of banking institutions.

"A careful survey of the Act of 1931 demonstrates that it does not make any attempt to change the primary obligation existing between a bank and its depositors under the subjects and conditions disclosed in the title of the Act. That primary obligation is, that if the bank has possession of funds of its depositors it is legally bound to pay them over when demanded.

The Act of 1931 only changes the point (in time) respecting the deposit and collection of instruments payable in money when the bank gains title to the proceeds of such instruments. Under the old law the bank gained title to the instrument upon its deposit; now it does not gain title but obtains the instrument as an agent for the purpose of collection. When the proceeds have been collected by the bank and credited to the account of the depositor, then, and then only, do the proceeds become part of the general funds of the bank. Consequently the Act of 1931, to again use what we said in the Gould case, does not add to or increase, subtract from or diminish, or in any way affect a right, duty, power or privilege of any incorporated bank or banking association. As it was not an amendment to the Banking Act, no reason existed for submitting the Act of 1931 to a vote of the people."

The case of *The People* vs. *Dennhardt*, 354 Ill. 350, involved the same statute as was under consideration in the case of *McQueen* vs. *Randall*, and the court in the Dennhardt case, without further consideration of the constitutional question, applied the law as laid down in the McQueen case.

The case of *The People* vs. *First State Bank and Trust Co.*, 364 Ill. 294, involved the following facts: One U. G. Orendorff entered into a contract with the First State Bank and Trust Company of Canton, pursuant to authority of the board of directors of such bank, whereby he purchased from such bank certain securities owned by it, on the promise of the bank to repurchase the same on demand, or in any event not later than certain dates set forth in said contract. Thereafter the bank was closed by the Auditor of Public Accounts, and a receiver appointed therefor. Orendorff demanded that said receiver carry out the contract for the repurchase of such securities. The receiver refused to do so, and justified his position by the provisions of Section 4 of "An Act for the protection of bank depositors", approved June 4th, 1879, which provides in substance that it shall not be lawful for any bank to assume the payment for, or become liable for, or to guarantee to pay the principal or interest of any bonds, notes or other evidences of indebtedness.

Orendorff contended that said Section 4 constituted an amendment of the General Banking Act and was null and void; not having been submitted to a vote of the people.

The Supreme Court had previously held in the Gould case that Section 1 of this same Act was not subject to this objection. In considering the question presented in the case

before it, and referring to said Section 4, the Supreme Court, on page 296, said:

"This section of the Act has nothing to do with the organization of corporations or associations with banking powers nor with any act of the General Assembly amending existing laws on that subject. It is not an Act creating corporations or associations with banking powers but is penal in its nature. Various sections of this Act have previously been before this court for consideration, and it has been uniformly held that they do not constitute an amendment to the Banking Act and so do not come within the constitutional provision for determination by a vote of the People."

The foregoing cases comprise all of the cases submitted to our Supreme Court since the adoption of the Constitution of 1870, in which any Act of the Legislature was claimed to be an amendment of the General Banking Act of this State.

Of the seven cases in which it was contended that the several legislative enactments involved therein constituted amendments of the General Banking Act, only two were held to constitute such amendments, and those two were the earliest decisions on the question, to wit: the decision in the Reed case, rendered in 1888, and the decision in the Sykes case, rendered in 1890. Furthermore, neither of said cases has any similarity whatsoever to the present case.

A careful study of the more recent decisions of our Supreme Court discloses the fact that such court has been gradually becoming more strict in its construction and determination of what is necessary to constitute an amendment of the General Banking Act.

Claimant's position on the question here involved is set forth on page 25 of its Brief, in the following language:

"State Depositary Law is unconstitutional because it amends the State Banking Act by granting to banks additional powers not possessed prior thereto. This no law can do without the approval of the People at a referendum."

In elaborating upon such proposition, claimant contends that the State Depositary Act attempts to change the primary obligation existing between a bank and its depositors and increases the rights, powers and privileges of banks by granting the power to pledge assets to secure deposits of State funds, which power they did not theretofore possess.

The primary obligation existing between a bank and its depositors was defined by our Supreme Court in the McQueen case, supra, as follows:

"That primary obligation is, that if the bank has possession of funds of its depositors, it is legally bound to pay them over when demanded."

For the purpose of determining whether the State Depositary Act . changes this primary obligation, or grants any powers or privileges not theretofore possessed, we will consider briefly the terms and provisions of such Act and the legal effect thereof.

The title of such Act is "An Act in relation to State monies". There is nothing in the title of the Act which refers even remotely to banks or banking. The Act itself refers only incidentally to those subjects. It is complete in itself and entirely independent of any other Act. It prescribes the duties of the State Treasurer with reference to the deposit of State monies; provides for the collection of interest on such deposits; provides the manner of advertising for and receiving proposals for the deposit of public monies; the classification of depositaries; the manner of approval or rejection of such proposals; provides that all such proposals shall be filed in the office of the State Treasurer and shall be open at all reasonable hours to public inspection; and further provides that the State Treasurer shall publish in pamphlet form a list of the banks approved as State depositaries of public monies, etc., which pamphlet shall be for general distribution by the State Treasurer. Section 9 of the Act specifically provides that the approval of any proposal shall confer no right upon any bank to receive deposits of public money. Section 10 provides that no monies in the State Treasury shall be deposited in any bank approved as a depositary unless such bank shall have deposited securities with the State Treasurer equal in market value to the amount of monies deposited. Section 11 defines the class of securities which may be accepted. Section 12 provides that the securities deposited shall remain the property of the banks depositing the same, and further provides that should the depositary fail or refuse to pay over the money deposited, when due and payable, the State Treasurer may sell the securities. Section 23 provides that "any State official or other person who wilfully violates any provision of this Act, for which a penalty is not otherwise prescribed", etc., shall be subject to a fine or imprisonment in the penitentiary, or both.

From this brief summary of the Act we deduce the following conclusions:

There is nothing whatsoever in the Act with reference to the organization of corporations or associations with banking powers, nor is there anything in the Act which purports to regulate banks or the banking business. The positive requirements of the Act have relation to the State Treasurer and the deposit of State monies. Any reference in the Act to banks or the banking business is merely incidental to the other provisions of the Act. There is no requirement that any bank shall become a State depositary, and any bank which becomes such depositary does so of its own volition. Under Section 9, if any bank makes application to become such depositary and the application is accepted, such bank nevertheless does not have a right to any deposit of State monies. The relation between the bank and the depositors remains the same as theretofore, to wit, that of debtor and creditor. The scope of the Act is indicated by the penal provision thereof, which applies only to "any State official or other person" who wilfully violates the same.

It is also a part of claimant's contention that that portion of the Depositary Act which authorizes a pledge of deposits, increases the powers of banks, and thereby gives the State a preference over other creditors. As stated by claimant, the provisions of the Act must be judged by their legal effect.

An Act which has the effect of granting to certain creditors a preference which they did not enjoy prior to the adoption of such Act, does not, by reason thereof, change the primary obligation existing between a bank and its depositors, and does not constitute such an increase of power as will make it an amendment of the Banking Act. This was expressly decided in the case of McQueen vs. Randall, supra. In that case the court pointed out that the effect of the Act was to change the relationship existing between the bank and its depositors from that of debtor and creditor to that of principal and agent, and further pointed out that under the provisions of the Act there in question, the holder of a certified check would become a preferred creditor, whereas prior to the adoption of such Act the holder of such check would be only a general creditor of the bank. Yet, notwithstanding

such facts, the court said that the Act there in question "does not add to or increase, subtract from or diminish, or in any way effect a right, duty, power or privilege of any incorporated bank or banking association," and held that the same did not constitute an amendment of the General Banking Act. The McQueen case, on the facts and the principles involved, more closely resembles the present case than any of the other cases herein cited.

It may be contended that in the McQueen case there was no express grant of additional powers to the bank. This is correct;—but the legal effect of the provisions involved in each case is identical, that is to say, to grant a preference; and, as stated by claimant, such provisions must be judged by their legal effect.

The decision in the McQueen case was approved in the recent case of *The People* vs. *First State Bank and Trust Co.*, *supra*, and therefore is the last authoritative expression of the Supreme Court on the questions involved. In our opinion the decision in the McQueen case is decisive of the issues in this case.

Furthermore, the General Banking Act relates to and regulates only State banks. It has no application whatsoever to National banks. Consequently, in order to constitute an amendment of the General Banking Act, of the nature suggested by claimant, the amending Act (State Depositary Act) must increase the powers of State banks. The effect of the provisions of such Act authorizing a pledge of assets to secure deposits of State money, is to give a preference to the State;—hence, if the State was entitled to a preference prior to the adoption of the State Depositary Act, the powers of State banks have not been increased by such Act, and the General Banking Act has not been amended thereby. Our Supreme Court has repeatedly held, and it must now be considered the well established law of this State, that the State has a sovereign right at common law, to a preference over general creditors in the distribution of the assets of a closed bank. *People* vs. *Farmers State Bank*, 335 Ill. 617; *People* vs. *Waukegan State Bank*, 351 Ill. 548; *People* vs. *West Englewood Bank*, 353 Ill. 457; *People* vs. *Oregon Savings Bank*, 357 Ill. 545; *People* vs. *Wiersema State Bank*, 361 Ill. 85.

In the Oregon State Bank case, supra, the court said:

"Upon the adoption of the common law the sovereign's right to priority in payment became an attribute of the People of the State. * * * It follows that although there is no constitutional or statutory provision on the subject, the State enjoys a right to priority in payment of its claims for undistributed tax moneys on deposit in insolvent State banks over creditors who do not have an antecedent lien against the assets of the bank."

In the Wiersema State Bank case, supra, the court said:

"No Legislation was necessary to establish or preserve the State's sovereign right to a preference in the distribution of the assets to the general creditors of a closed bank. That right existed at common law."

The State having a sovereign right to a preference prior to the adoption of the State Depositary Act, any provisions of such Act which give rise to such a preference, do not grant any additional powers. A somewhat similar question was presented in the Italia America Shipping Corporation case, supra, where the court held that the Act there in question did not increase or enlarge the powers of any banking corporations, for the reason that prior to the passage of such Act, banking corporations possessed the powers in question.

In determining the question here involved, we must also take into consideration certain well established rules of construction which have been approved by our Supreme Court in numerous cases.

In the case of *People* vs. *Anderson,* 353 Ill. 289, the court, on page 295, said:

"Constitutional provisions are to be liberally construed in order that the Legislative enactment may be sustained. All doubt and uncertainty arising from the Constitution itself as well as those in the statute should be resolved in favor of the validity of the statute."

In the case of *People* vs. *Gill,* 358 Ill. 301, the court, on page 264, said:

"It is only where there is a clear conflict between the terms of the Act and some provision of the Constitution that the court is justified in holding the Act unconstitutional. Doubt and uncertainty must yield to the legal presumption in favor of the validity of the Act."

In the case of *Punke* vs. *Village of Elliott,* 364 Ill. 604, the court said:

"The legal presumption is that a statute is valid, and if capable of two constructions, the one which favors its validity is the interpretation to be adopted, and one who challenges the constitutionality of a statute has the burden of showing clearly wherein it is in conflict with the Constitution."

Upon a careful consideration of the foregoing and other authorities cited by claimant and respondent, as well as the

terms and provisions of the State Depositary Act, we have come to the conclusion that such Act does not change the primary obligation existing between a bank and its depositors, and does not add to or increase the powers of any bank or banking association within the meaning of those words as used in the decisions hereinbefore referred to, and therefore does not constitute an amendment to the General Banking Act. Consequently, it was not necessary that such Depositary Act be submitted to a vote of the people.

Having arrived at this conclusion, it will not be necessary to consider the other questions raised by the Attorney General.

The motion of the Attorney General to dismiss the case must therefore be sustained.

Motion sustained. Case dismissed.

## OPINION ON REHEARING.

*Per Curiam:*

Claimant filed a petition for rehearing herein on March 31st, 1937.

We find nothing in such petition which was not fully and carefully considered by the Court in arriving at its original decision, and the petition for rehearing will therefore be denied.