THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
NICOLÁS DEL VALLE, Defendant and Appellant.

No. 9014.   Argued February 3, 1942.—Decided March 25, 1942.

*Enrique Báez García* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

Nicolás del Valle was prosecuted, convicted, and sentenced in the District Court of Mayagüez for a violation of § 18 of Act 59, approved April 30, 1928, for the regulation and government of the docks and harbors of Puerto Rico, in that he— .

". . . . did unlawfully, wilfully, maliciously, knowingly and intentionally, erect a wooden structure consisting of a house of permanent consistence, on tide land in Mayagüez, P. R., ward of Marina Meridional, which land belongs to the People of Puerto Rico, without having secured for such purpose the written consent of the Commissioner of the Interior of Puerto Rico."

He was sentenced to pay a fine of $20 and was moreover ordered to remove the house as prescribed by law. The defendant urges in this appeal that the lower court erred in failing to apply the doctrine of *ejusdem generis;* in holding that the building of houses is included within the prohibitions of § 18 of said act; in failing to hold that its provisions are void, since the same refer to subjects not expressed in the title of the act; in failing to acquit the defendant, as the facts charged against him do not constitute a public offense; and in convicting the defendant without sufficient evidence.

The title and § 18 of Act No. 59 (Laws of 1928, p. 424) read as follows:

"An Act for the regulation and government of the docks and harbors of Porto Rico.
"   *      *      *      *      *      *      *

"Section 18.—No nets will be permitted in any of the passages, entrances to ports, or in those places where, in the opinion of the Captain of the Port, such nets may interfere with navigation, and it shall be the duty of the owners or persons in charge thereof to remove them immediately upon receiving notice from the Captain

of the Port. It shall neither be permitted to burn resin, tar, turpentine or any other combustible matter, on any dock, quay, embankment or shore within a harbor, nor on board any vessel in port, without previous written permission from the Captain of the Port; *nor will the installation of palisades or any other structure, made of timber, masonry, concrete or any other matter giving it such consistency as to make it permanent, or of fences of barbed-wire or any other material, be permitted on the shores of harbors, bays or road-steads or in the maritime zone or lands adjacent thereto, without the written consent of the Commissioner of the Interior, which shall be obtained before erecting such structures.*

"Any person who may violate this section of this Act shall be punished by a fine of not less than twenty (20) dollars nor more than two hundred (200) dollars, or by imprisonment for not less than fifteen (15) nor more than one hundred eighty (180) days, or both such fine and imprisonment in the discretion of the court; and said person shall also be responsible in a civil way for the damages caused, and the materials constituting said work may be seized and sold to cover the expense of removal thereof, following the procedure prescribed in Section 15 of this Act." (Italics ours.)

The italicized words in the above quotation constitute the pertinent part of the statute alleged to have been violated by the defendant. The latter after raising some questions of law in the court below which were dismissed, and at the close of the evidence for the prosecution, presented a motion for nonsuit and, upon denial thereof, submitted the case without introducing any evidence in his defense.

In support of his first assignment of error, the appellant urges that, if the doctrine of *ejusdem generis* is applied, the building of houses is not prohibited by § 18 of Act No. 59, *supra.* He contends that the legislative intent was to punish two acts, viz., the erection of palisades made of timber, masonry, concrete or any other material, or fences of barbed-wire or of any other material; and that the phrase "or any other structure" does not cover "houses," because a house is not a work similar to a palisade or a wire fence.

Although, according to the doctrine of *ejusdem generis,* where in a statute words are used with a definite meaning

followed by others of a general meaning, the latter should be construed as being confined or restricted to things or persons of the same kind or nature as the former, such doctrine is nothing else than a rule of construction that may be applied for a better determination and understanding of the legislative intent. It is not a rigid and inflexible doctrine that may and should be applied as a rule of construction where such construction would result in defeating such legislative intent or purpose. See Crawford, Statutory Construction (1940), p. 327, § 191, 59 C. J. 981. As stated in *U. S.* v. *Mescall,* 215 U. S. 26: "It is not a cast-iron rule, it does not override all other rules of construction, and it is never applied to defeat the real purpose of the statute, as that purpose may be gathered from the whole instrument."

As to the maxim *noscitur a sociis,* also cited by the appellant as applicable to the case at bar, it will suffice to say that it has been held that the doctrine of *ejusdem generis* is nothing else than a collary to the broader maxim *nositur a sociis,* the latter being to the effect that where there is doubt as to the meaning of a word the same should be determined by a reference to the meaning of other words connected therewith. Like *ejusdem generis,* it is a rule of construction that should not be applied if, by so doing, the legislative intent is defeated. The scope of the doctrine of *noscitur a sociis* is clearly expressed in Crawford, Statutory Construction, p. 325, § 190.

The word *"obra"* (work) includes, among other meanings, that of *"edificio en construcción"* (building under construction), and *"edificio"* (building) means "a work erected to be used as a dwelling or for similar uses; as a house, temple, roof, etc." Dictionary of the Spanish Academy.

On the other hand, *"palizada"* (palisade) means a place fenced off with stakes, and a *"cerca"* (fence) is a stockade or wall set up around any place, farm or house, as a protection or partition. (Id.)

To hold, in the case at bar, that, according to the doctrines *of ejusdem generis* and *noscitur a sociis,* the phrases "or any other structure" and "any other such works" are limited or restricted by the words "palisades" or "wire fences" would defeat the true legislative intent, as the same appears, not only from § 18, *supra,* but also from § 47 of the act, which in its pertinent part provides as follows:

. "Section 47.—   .   .   .   .   .   .   .   .

"Port captains and pilots acting as such shall be under the direction and supervision of the Commissioner of the Interior and shall have the following powers:

"(a)   *   *   *   *   *   *   *

"(b) To see, by themselves and their assistants, to the preservation of the docks, quays and embankments; *and to see that both these and the public lands forming the maritime zone, the lands added thereto and the reclaimed lands, be duly preserved and that they may not be occupied without the written consent of the Commissioner of the Interior, . . ."* (Italics ours.)

The intention of the lawmaker, in our opinion, was none other than to prohibit the erection, except by written permission of the Commissioner of the Interior, on the shores of harbors, bays, or roadsteads or in the maritime zone or lands adjacent thereto or reclaimed from the sea, not only of palisades and wire fences but also of any kind of work, made of timber, masonry, concrete, or of any other material giving the same a permanent consistence. To restrict the meaning of the word *"obra"* (work) to palisades or wire fences would nullify the statute. What purpose would be accomplished by prohibiting the erection of palisades and wire fences on the shores of harbors, bays or roadsteads, and of wire fences in the maritime zone or public lands adjacent to such zone, and holding at the same time, by interpretation of the statute, that there may be permitted the construction of houses, buildings, docks, quays or any other work on said places? The intention of the Legislature was to prohibit the erection of any work of a permanent nature that

might interfere with the free traffic in the use of harbors and docks of Puerto Rico. We must not, by judicial construction, restrict the meaning of the phrase "or any other work" to things of the same kind as palisades or wire fences.

The first error assigned is nonexistent.

■ The second error assigned is likewise nonexistent, inasmuch as the provisions of § 84 of our Organic Act, to the effect that if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed, are not applicable to a case like the one at bar which involves a general law regulating the operation of docks and harbors. The imposition of penalties to be found therein is incidental and its object is to provide for the enforcement of the regulations contained in the act. The purpose of the provision set forth both in our Organic Act and in other constitutions, to the effect that no bill shall be passed containing more than one subject unless expressed in its title, is to prevent the joining in one act of incongruous and unrelated matters. *Louisiana v. Pilsbury,* 105 U. S. 278, 288. But the inclusion of a penalty in a general regulatory act, which prescribes certain prohibitions requiring such penalty, does not invalidate the act because said penalty is not expressed in the title. 59 C. J. 814, § 395. As stated in *Italia America Shipping* v. *Nelson,* 154 N. E. 198, 200; "but when the title of an act is general and is of such nature that the natural inference is that the act is regulatory and that the penalties are a proper incident to its enforcement, the constitutional limitation is not violated."

■ In the third assignment the appellant maintains that the acts charged against the defendant do not constitute a public offense because what is prohibited under § 18, *supra,* is the erection of fences made of wire or any other material on the same places where the erection of palisades is pro-

hibited, that is, on the shores of harbors, bays or roadsteads, and moreover within the maritime zone or public lands adjacent to said zone, and, therefore, that the erection of a palisade or of a house on said zone is not prohibited. It is further urged by the appellant that the information charges the defendant with the commission of an offense on land belonging to The People of Puerto Rico, that is, within tidelands, and that the latter do not belong to The People of Puerto Rico.

As to the first ground, we think that what we have said when disposing of the first assignment is sufficient to show that such a literal interpretation of the statue as the appellant claims would defeat the legislative intent and should not prevail. Nor is the second well founded either, for the reasons which we shall set forth presently.

The first section of the Harbor Law of May 7, 1880, provided that the following belong to the National domain and are for the public use, without prejudice to any rights held by private persons:

"1st. Tideland (*zona marítima-terrestre*), which is that part of the seashore or coast of the Spanish territory which is washed by the sea in its ebb and flow where the tide is perceptible or which is covered by breakers in stormy weather where the tide is not preceptible.

"2d. The littoral sea or maritime zone adjacent to the shores or limits of the Spanish domain, to the full width determined by international law, including all inlets, roadsteads, bays, harbors, and other havens used for fishing or navigation purposes."

In the case of *People* v. *Dimas et al.*, 18 P.R.R. 1019, frequently cited in our decisions, this court, through the then Associate Justice Del Toro, made a careful study regarding the public lands ceded by the Spanish Crown to the United States under Article 8 of the Treaty of Paris, and said lands included the tidelands (*zona marítima-terrestre*) already mentioned. Section 13 of the Foraker Act determined the properties acquired by the United States under the Treaty

of Paris and placed under the control of the government established by that act, and among such properties are included "all the harbor shores, docks, slips, and reclaimed lands, but not including harbor areas or navigable waters."

Subsequently, in passing the Organic Act of March 2, 1917 (39 Stat. 951), Congress ratified such transfer by providing in § 7 of that act, partly as follows:

"Section 7.—That all property which may have been acquired in Porto Rico by the United States under the cession of Spain in the treaty of peace entered into on the tenth day of December, eighteen hundred and ninety-eight, in any public bridges, road houses, water powers, highways, unnavigable streams and the beds thereof, subterranean waters, mines or minerals under the surface of private lands, all property which at the time of the cession belonged, under the laws of Spain then in force, to the various harbor works boards of Porto Rico, *all the harbor shores, docks, slips, reclaimed lands,* and all public lands and buildings not heretofore reserved by the United States for public purposes, *is hereby placed under the control of the Government of Porto Rico, to be administered for the benefit of the people of Porto Rico; and the Legislature of Porto Rico shall have authority, subject to the limitations imposed upon all its acts, to legislate with respect to all such matters as it may deem advisable:* . . ." (Italics ours.)

So that ever since the year 1917 all the harbor shores, docks, slips, and reclaimed lands have been under the control of the Government of Puerto Rico, to be administered for the benefit of the People of Puerto Rico, without the limitation set forth in the Foraker Act, and the Legislature has been authorized to legislate with respect to the same. As in the maritime zone, which formerly belonged to Spain, there is included the seashore or coast which is washed by the sea in its ebb and flow where the tide is perceptible, or which is covered by breakers in stormy weather where the tide is not perceptible, such lands were acquired by the United States under the Treaty of Paris and subsequently placed under the control of the People of Puerto Rico by virtue of the Foraker Act and the Organic Act now in force. Since the complaint in

this case alleges that the defendant built a house on tideland in Mayagüez which is under the control of the People of Puerto Rico, said complaint is sufficient.

■ Lastly, the appellant attacks the sufficiency of the evidence. Jesús Trujillo Lange, Port Captain of Mayagüez, testified, in short, that the defendant was erecting a house within land reclaimed from the sea, the same being tideland, on the right bank of the Yagüez River which is also within the maritime zone, and that the defendant has stated that he did not hold any permit from the Commissioner of the Interior for building the house. This testimony was not overcome in any way, as the defendant introduced no evidence. As the lower court gave credence to said testimony, and as it is not charged that the court acted with passion, prejudice, or partiality, or that it committed manifest error in weighing such evidence, the same is sufficient to support the judgment of conviction rendered.

The appeal will be denied and the judgment appealed from affirmed.